CROSWELL, TRUSTEE *vs.* ALLIS ET AL.

Where household furniture is mortgaged, and possession thereof retained by the mortgagor, under the provisions of the statute, [Rev. Stat., Title 20, Sec. 4,] which provides, that " whenever the occupant of any dwelling-house, having a family, shall mortgage the household furniture used by him in housekeeping, by a deed in which such furniture shall be particularly described, and which shall be executed, acknowledged, and recorded, in all respects as mortgages of lands are required to be, such mortgage shall be good and effectual, although the mortgagor shall retain possession of such mortgaged property ; " such household furniture does not lose the *immunity* conferred upon it by the statute, in exempting it in such case from the necessity of a change of possession, by reason of the fact that, in addition to its use by the *family* of the mortgagor, it also constitutes the furniture of a hotel kept by the mortgagor, and in which he resides with his family.

A mortgage of household furniture purported to convey a specified number of different kinds of furniture, not otherwise described than by a general designation and as contained in the hotel of the mortgagor, there being at the time a greater number of some of the articles and a less number of others, owned by the mortgagor, and contained in his hotel :—Held, that the mortgage was good as to those articles that were less in number than those described in the mortgage, and that, as to the others, it was void for uncertainty.

Where a mortgage was executed on the 21st day of July, to secure the mortgagee for an endorsement made for the accommodation of the mortgagor on the 13th day of July, and in compliance with a promise of the mortgagor when he requested such endorsement, that he would as soon as he conveniently could thereafter, make such mortgage, but was not acknowledged and delivered until the 31st day of July, and was not left for record until the 8th day of August, and within sixty days after said 21st day of July, the mortgagor went into insolvency ; it having been found by the court that, although the mortgagor was embarrassed and insolvent at the time, yet in procuring said note to be discounted, and in executing said mortgage, he did not act in view of insolvency, and that the execution thereof was not delayed, nor the same withheld from record, for the purpose of concealing the existence thereof, or for any other fraudulent purpose ; it was held, that such mortgage was not invalidated by any of the provisions of the act " for the relief of insolvent debtors and the more equal distribution of their effects among their creditors."

THIS was a petition in chancery, brought by Frederick Croswell, as trustee in insolvency of the estate of Salmon W. Allis, against Josiah Allis, William H. Elliott and others.

The petition alleged that the petitioner was greatly hin-

dered and embarrassed in the settlement of said estate, by reason of claims made upon a portion of the personal estate by the respondents severally, the facts with regard to which he was unable fully to ascertain ; praying for disclosures from the respondents, an enquiry by the court into the validity of certain pretended mortgages and conveyances, and an order for such a disposition of the property in question, as should be necessary to protect the interests of all parties and enable the petitioner to settle said estate; with a general prayer for relief.

The case was referred to a committee, whose report embraced the following facts :

On the 13th day of July 1854, the said S. W. Allis made his promissory note, dated on said 13th day of July, for the sum of two thousand dollars, payable sixty days after date, to the order of William H. Elliott, at the New Haven county bank, and applied to said Elliott to endorse said note for his accommodation, and to enable him to get the same discounted at said bank ; and to induce said Elliott to endorse said note, he promised to secure him for so endorsing, by a mortgage on furniture in the hotel then kept by him and more particularly hereinafter described, and at the same time represented to said Elliott, that there was to be a meeting of the directors of said bank on that day, and that he wanted to present said note for discount at such meeting, and promised said Elliott that if he would then endorse said note, he would as soon thereafter as he could conveniently get it drawn, execute and deliver to him said mortgage. Said Elliott relying on the representation and promise of said Allis as aforesaid, endorsed said note, and the same was on said 13th day of July, discounted by said bank for said Allis.

Afterwards and in pursuance of said agreement, said Allis executed and delivered to said Elliott the mortgage more particularly hereinafter described. Said mortgage was drawn up and signed and sealed by said Allis on the 21st day of July 1854, but by mistake dated on the 21st

day of August. The same was acknowledged by said Allis on the 31st day of July, and immediately thereafter was delivered by said Allis to said Elliott, who on the 8th day of August 1854, lodged the same for record with the town clerk of the town of New Haven, but the execution of said mortgage was not delayed, nor was said mortgage after its execution withheld from record, for the purpose of concealing the existence thereof, or for any other fraudulent purpose.

When said note became due, said Allis did not pay the same or any part thereof, and it was protested for non-payment, and due notice was given to said Elliott as endorser, who thereupon paid the same to said bank, and the amount so paid by said Elliott with the interest thereon, was found to be justly due from said Allis to said Elliott.

On said 13th day of July 1854, said Allis was, and for a long time before, had been, and until the 14th day of September 1854, continued to be, engaged in the business of keeping a hotel in the city of New Haven, called the " Tontine," and occupied for that purpose three distinct dwellings contiguous to each other in the same block of buildings, one called the Tontine building, one the Woodward house, and one the Hitchcock house. Said Allis and his family, which consisted of his wife, daughter and sister, had their private parlor and received the family visitors in the Hitchcock house, and took their meals in the Tontine building. Said Allis, his wife and daughter slept in the Hitchcock house, and his sister slept in the Tontine building. The washing of the family, and of the hotel boarders, was done together in the Tontine building. The linen was used over the whole house as occasion required, and the three buildings were all used and occupied for the purposes of a hotel, the Hitchcock house being to some extent reserved for the better class of hotel boarders.

The principal part of said furniture was in the Tontine building, and the rest of it in the other two buildings, and all said furniture was used in keeping said hotel, and by said Allis and his family, as occasion required. Said

furniture remained in said hotel without any material change until the same was attached by the creditors of said Allis, as is hereinafter stated.

There were in the Tontine building seventy feather beds, ninety-one mattresses, eighty-nine bedsteads, thirty-five bureaus, two hundred and twenty-nine chairs, eighty tables, fifty-seven wash-stands, and one thousand three hundred and ninety-four yards of carpeting ; and in the Woodward house, eight feather beds, sixteen mattresses, seventeen bedsteads, four bureaus, twenty-four chairs, eight tables, six wash-stands and one hundred and ninety-five yards of carpeting ; and in the Hitchcock house, seven feather beds, five mattresses, eight bedsteads, seven bureaus, forty chairs, fifteen tables, six wash-stands and three hundred and eight yards of carpeting ; and there were in the hotel from three hundred and sixty-seven to four hundred cups and saucers and *four hundred and eighty-three plates,* and bedding about in proportion to the beds.

On said 13th day of July 1854, said Allis was, and continued to be up to the time of his failure, as hereinafter stated, in embarrassed circumstances, and indebted to his creditors in an amount much exceeding his means of paying, but in procuring said note to be discounted, and in executing said mortgage he did not act in view of insolvency. At that time and until after the 8th day of August 1854, he expected to go on with the business of keeping said hotel, and did continue said business until the 14th day of September 1854, when all his visible property was attached by his creditors, and afterwards Lucius Gilbert of said New Haven, brought an attachment, on which regular legal proceedings were had according to the provisions of the act "for the relief of insolvent debtors, and for the more equal distribution of their effects among their creditors," and on the 21st day of September 1854, upon the petition of said Gilbert to the court of probate for the district of New Haven, the petitioner was appointed trustee of the property of said Allis for the benefit of his creditors. The petitioner

accepted the trust, and gave bonds according to law, and as such trustee, immediately thereafter took possession, and made and returned to said court of probate an inventory, of all the furniture then in said hotel, being the same furniture above described.

Immediately upon the petitioner's taking possession of said furniture, Josiah Allis, the brother of the said S. W. Allis, notified the petitioner that he, said Josiah, was the owner of a part of said furniture, and the said S. W. Allis, also insisted that the furniture so claimed by the said Josiah was the property of said Josiah, but the petitioner proceeded to take possession of and inventory all said furniture as the property of said S. W. Allis.

Afterwards, by the written request and direction of the creditors of said S. W. Allis, the petitioner paid to the said Josiah, the sum of one thousand dollars, and in consideration thereof, the said Josiah released to the petitioner as trustee as aforesaid, all his interest in said furniture.

The committee further found that the petitioner had sold all the furniture inventoried by him and converted it into money.

The descriptive part of the mortgage of the said S. W. Allis to the said Elliott, which is all that is important for the purposes of the present case, is as follows:

" One hundred beds, one hundred bedsteads, one hundred mattresses and bedding, two hundred chairs, one hundred tables, two thousand and five hundred yards of carpeting, forty bureaus, seventy-five wash-stands, one hundred knives and forks, fifty dozen plates and cups and saucers, &c. Said articles now being in the Tontine in said New Haven, and now occupied by myself and family, and said articles are used in keeping said house, and all of the value of two thousand dollars."

At the term of the superior court holden in the county of New Haven, in December 1855, the report of the committee was accepted, and the questions of law arising thereon, reserved for the advice of this court.

*Blackman* and *Peck*, for petitioner.

1. The property named in the deed, was not subject to mortgage as household furniture, under the provisions of section 4th, of the act against fraudulent conveyances. The language of the statute is, " whenever the occupant of any dwelling-house having a family shall mortgage without the real estate the household furniture used by him in house-keeping," &c.

The intention of the statute is to give every person engaged in housekeeping, the opportunity to mortgage his household furniture, without parting with the possession which might subject his family to discomfort or distress. It extends only to furniture used in housekeeping, and is confined to a person having a family.

A person entering into the business of keeping a hotel, is not necessarily one who has a family ; nor even if he has a family does that necessarily form any part of the establishment. A man's family is his household. The place where all household furniture used by him in housekeeping is located, may be, and often is entirely distinct from his hotel, where he pursues the business of keeping boarders and entertaining travelers. The furniture used for keeping a hotel may therefore be entirely a distinct thing from the furniture used in housekeeping.

It is true the word " family" may be extended to mean all persons living in one house under one head, but the question is, how did the legislature intend it should be understood in this statute ? Did it mean to protect the possession of property, used for family and domestic purposes, or that invested in business in keeping a hotel ? If the latter, why the restriction in the statute, to a person having a family ? If it was the intention to allow household furniture, however used, to be protected, this restriction was unnecessary.

The third section of the statute providing for the mortgage of household furniture with the real estate, uses language which shows still further the meaning of the fourth section. The language there is " the owner of a dwelling-house having a family."

Now although a hotel is in one sense a dwelling-house it is never understood as meaning the same thing. And the fact that these restrictive words are used, shows that the operation of the statute was intended to be limited. If limited, it may be asked, to what? If extended to hotel keeping, there is no use to which household furniture can be put which is not covered by the statute.

2. The mortgage to W. H. Elliott is so uncertain and indefinite in its description of the property, that it is impossible to tell what property if any is conveyed by it.

The only designation as to the situation of the property, is that it is in the Tontine in New Haven. No other description is given than the general name of each class of articles, and even that is so indefinite as to furnish no idea what is meant.

The number of articles in the Tontine as reported by the committee, bears no proportion to the number mortgaged, and there is nothing to indicate which of them are included in the conveyance. Not even the rooms where the property is used are mentioned. They are also of different values.

Upon which then can the trustee calculate, to know the value of the property held by the mortgage lien. And should Elliott make demand of him, what would it be his duty to give up?

This point was directly decided by Storrs, J., in the case of *Foot and another* in New Haven county, where the court held that a conveyance of a certain number of articles of household furniture in a house, there being a larger number there and nothing to indicate which were conveyed was void for uncertainty.

3. It is found that this endorsement was made on the 13th day of July 1854, that the mortgage was executed on the 31st day of July, and left for record on the 8th day of August following.

This endorsement was "not made at the time when the security was taken," and it was in fact "withheld from record" a further term of eight days after it was finally exe-

cuted, and˙ this when both parties resided in⹁ New Haven, and within a quarter of a mile of the town clerk's office.

Now no matter what may have been the intention òf the parties, this was in fact contrary to the seventh section of the insolvent act, page 515, revised statutes.

*Dutton* and *Beach,* for respondents.

First. The property mortgaged was within the provisions of section 4th of the act against fraudulent conveyances. Rev. Statutes, page 571.

The mortgagor was the occupant of a dwelling-house. He had a family, and the furniture was used in housekeeping.

The fact that the property was also used in the business of keeping a hotel does not destroy its character as household furniture.

1. It was the nature and not the amount of the property the legislature intended to recognize, in exempting it from the operation of the act against fraudulent conveyances.

2. If the occupation of the owner of the furniture is such, that he can pursue it in the dwelling-house where his furniture is located, such occupation would not of itself change the nature of the property.

3. Nor will the additional fact that his business is such, as to permit him to avail himself of the property in a mode consistent with its use as household furniture, change its nature. It still remains houshold furniture within the letter and the spirit of the statute.

Second. The conveyance is not invalidated as to any of the classes of property mentioned in it, by reason of its purporting to convey a greater or less number of articles in that class, than was contained in the house.

1. Where the number of the articles as descibed in the mortgage exceed the quantity contained in the house, no uncertainty can exist. And the value of this class is abundantly sufficient to satisfy the mortgage debt.

2. The number described in the deed falls short of the actual quantity in some instances; but the deficiency is so small when compared with the large amount conveyed, that

it clearly indicates the intention of the parties to include the whole, and a want of intention to separate a part from the whole. *Barry* v. *Bennett,* 7 Met. R., 354.

3. No practical difficulty has resulted from the claimed uncertainty. The committee do not find that the trustee has been embarrassed in designating the property mortgaged; on the contrary he has taken the whole into his possession and sold it.

Third. The mortgage is not invalidated by any of the provisions of the insolvent act.

The committee find expressly that it was not made in view of insolvency. Though not made at the same time with the endorsement, in fact, yet the law will so regard it. It was all one transaction. The endorsement was made on the faith of the mortgage, and it is found that the execution was not delayed, nor the mortgage withheld from record, for the purpose of concealment, or for any other fraudulent purpose.

STORRS, J. The only question made before us in this case, respects the validity of the mortgage from S. W. Allis to Elliott. Its form is confessedly unexceptionable; but various objections to it have been taken by the plaintiff, arising on the facts found by the committee These objections will be examined in the order in which they have been presented.

1. It is found that the mortgagor remained in possession of the property embraced in the mortgage, from the time of its execution to the appointment of the plaintiff as trustee; and the plaintiff claims, first, that that circumstance, by the settled law of this state, in regard to the unexplained retention of the possession of personal property by the vendor, rendered the mortgage fraudulent and void. In answer to this objection, it is claimed that the mortgage is rendered valid by the provisions of the fourth section of the act against fraudulent conveyances. (Stat. 571, tit. 20,) notwithstanding such retention of possession by the mortgagor That section provides that " whenever the occupant of any dwelling-house, having a family, shall mortgage the household furniture used by him

in housekeeping, for the security of any debt or duty, by a deed in which such furniture shall be particularly described, and which shall be executed, acknowledged and recorded in all respects as mortgages of lands are required to be, such mortgage shall be good and effectual, although the mortgagor shall retain possession of the mortgaged property." As it appears that the mortgagor in this case was the occupant of a dwelling-house, and had a family of his own, exclusive of the guests who were entertained in his house, and that the property mortgaged was household furniture, there is no doubt, and indeed it is conceded, that the conveyance fulfils all the conditions which are required by this provision in order to entitle it to the immunity of being free from the necessity of a change of the possession of the property, and to render the conveyance valid, although there was no such change of possession, unless it be that which requires that the furniture mortgaged should be used by the mortgagor in housekeeping. Whether that provision was complied with in this particular, is the question before us. On this point, the question is reduced by the finding of the committee, within much narrower limits than those embraced by the argument of the plaintiff. On the facts found, it is not necessary to decide the question which has been raised, whether the statute applies to a mortgage of household furniture by a person who, whether having a family of his own or not, uses it exclusively in the business of keeping a hotel. It appears from the finding, that the rooms in the premises occupied by the mortgagor as a hotel, which formed only one establishment, although originally consisting of several distinct dwelling-houses, and also the furniture therein which was embraced in the mortgage in question, was used indiscriminately by the family of the mortgagor, consisting of his wife, daughter and sister, for family purposes, as they had occasion, as well as for the accommodation and entertainment of the guests of the hotel. It is quite obvious that if this furniture were not used for the latter purpose, it would be embraced within the statute, and the question therefore is, whether the use of it for that purpose deprives it of the im-

munity which the law would otherwise confer on it, in dispensing with the necessity of a change of possession. It is to be observed that the furniture to which the statute applies, is not limited by it in respect to its quantity, quality or value; the use made of it by the mortgagor, is the only characteristic which is to determine whether a change of possession must accompany a mortgage of it. Now it can not properly be said, that the use of it for the purposes of a hotel deprived it, in this instance, of the character of furniture used by the mortgagor for his own domestic purposes, although it is possible that it was used to a less extent for the latter purposes, than if it had not also been used for the other; but the extent of its use is not made the criterion by which it is to be determined, whether the statute applies to it. It has been suggested that the statute should be held to embrace only furniture which is used by the mortgagor exclusively for his own family housekeeping. We do not feel at liberty to give it such a restricted operation. It is remedial in its nature, and its design is to be mainly regarded in its construction. It is very clear that the legislature was induced, by the fourth as well as the next preceding section of this law, to exempt a mortgage of the articles of personal property therein specified, on its being executed and made public by its being recorded as therein provided, from the general rule applicable to conveyances of personal property, by the consideration that those articles are such as are constantly used by the owner and constitute the means of his livelihood, and that he would necessarily be subjected to great and peculiar inconvenience and injury by being deprived of their use. We think that the furniture in question was embraced by the reason and policy, as well as by the letter, of the statute, and that the mortgage of it was unexceptionable on this ground.

2. The mortgage in question purports to convey different kinds of furniture, and a specified number of each kind. It appears that it specified a greater number of some of these kinds, and a less number of others, than the mortgagor owned. The plaintiff objects that it is therefore void as to both of these kinds for indefiniteness and uncertainty as to

the things conveyed. This objection is groundless as to those classes of which a greater number of articles is mentioned than the grantor possessed. *Omne majus continet in se minus.* The conveyance comprehended, and was therefore sufficient to pass, all the articles of those classes which he owned, and beyond that was simply inoperative. But in regard to those classes of which he owned a greater number of articles than that specified to be granted, we are of opinion that the conveyance is so indefinite and uncertain that none of them passed by it. The question before us depends on the terms of the conveyance alone. There was no delivery, separation or designation of the particular articles intended to be conveyed, nor any act accompanying or connected with the conveyance, by which they can be ascertained. In this respect the case is essentially different from those cited by the defendant. The inventory shows that the articles, of which each of these classes was composed, differed in their quality and value. How then could it be determined, by the mortgage itself, which of them were intended to be conveyed? And it is not an instrument where by a true construction of its terms, either the grantor or grantee was at liberty to select the articles which should pass by it. If it were, there had been no such selection in this case.

3. We are strongly inclined to the opinion that as against the plaintiff, the mortgage in question, under the circumstances in which it was executed, is not liable, within the true meaning of the seventh section of the act of 1853, for the relief of insolvent debtors, &c. (Statutes, p. 515,) to the objection made by the plaintiff, that it was not taken at the time when the endorsement, which it was intended to secure, was made. But it is not necessary to decide that point, because it is found that it was not made by the mortgagor with a view to his insolvency, or while he was in failing circumstances, according to the construction which we have put on that act, and therefore it is not one of those conveyances to which the clause above alluded to in the seventh section of it, applies. (*Utley* and al. v. *Smith* and al., 24 Conn. R., 290.) Nor is this conveyance liable to the objection raised against

it under the last clause of that section, for it is found that it was not withheld from record for the purpose of concealing its existence; and there is no claim that the mortgagor was permitted to remain in possession of the furniture for a like purpose.

The superior court is therefore advised, that the mortgage should be sustained as to those several classes of articles where the number of them owned by the mortgagor did not exceed that specified in the conveyance, and held void for the residue.

In this opinion, the other judges, WAITE and HINMAN, concurred.

Decree accordingly.