## WATSON V. PUGH.

1. **LANDLORD AND TENANT:** *Relation of: Giving rent note for purchase money.*

B., owning certain land, agreed to sell it to S., who gave his notes for the purchase money and was let into possession under a bond conditioned for the execution of a conveyance on payment of the notes. After the notes matured, B. conveyed his interest in the land to the defendant. On the trial of this action, B. testified, in general terms, that at the time of such conveyance there was an understanding between him and S. that their contract was canceled. But there was no written agreement to that effect. The notes were transferred to the defendant, the bond for title was not taken up and S., who testified that the contract to purchase was not canceled, was permitted to remain in possession for several years with no

claim upon him to pay rent. He subsequently executed a mortgage to the plaintiff on certain cotton produced on the land and a few weeks afterwards made his note to the defendant for $400, payable in the fall of the same year and specifying that it was for rent of the land. It was for about twice as much as the land would rent for, and S. testified that it was the understanding between him and the defendant that the amount paid on the note should be credited on his purchase. In an action to recover the value of the cotton which the defendant converted to his own use, *held:* (1.) That the evidence was sufficient to sustain the finding of the court that the contract of purchase had not been rescinded, and that the relation of landlord and tenant did not exist between the defendant and S. (2.) That the recital in the note for $400 that it was given for rent did not preclude the plaintiff from proving that it was not in fact given for that purpose.

2. CHATTEL MORTGAGE: *Description of property.*

A mortgage which describes the property conveyed as "eight bales of cotton weighing 500 pounds each of the crop" which the mortgagor should raise in a designated locality, is not void for uncertainty where the whole crop did not amount to eight bales.

APPEAL from *Ashley* Circuit Court in Chancery.

C. D. WOOD, Judge.

*J. W. VanGilder*, for appellant.

1. The evidence in this case shows beyond a doubt that the trade made by Bell with Simmes was canceled and it was not important that the bond for title should have been surrendered up and canceled. Pugh had notice of Watson's claim of ownership, his deed being of record. Simmes was estopped to deny that Watson was his landlord and that the note was for rent, and his mortgagee stands in no better attitude.

2. The mortgage was void as to the cotton for uncertainty. 41 Ark., 70-73; 43 Id., 350; Jones, Chat. Mortg., sec. 46, *et seq.*

*M. L. Hawkins* and *Jones & Martin*, for appellee.

Simmes had an interest in the land which could only be

divested by writing of equal or greater dignity than the one under which he held.    21 Ark., 83.    Nor could Simmes and Watson, by any agreement after the execution of the mortgage, affect Pugh's rights under the mortgage.    19 Pick., 213; 4 N. H., 91.    Watson had no contract for a lien on the crops to secure the purchase money and without that he had no lien.    39 Ark., 567.

The mortgage is sufficiently definite.    It describes the cotton and the place on which it is to be raised.    Jones on Ch. Mort., secs. 53, 54; 39 Ark., 397.

COCKRILL, C. J.

This is an action by Pugh, the mortgagee of one Simmes, to recover of Watson the value of six bales and a fraction of the mortgaged cotton which Watson had converted to his own use.    Watson claimed to be the landlord of Simmes and to have received the cotton from him in discharge of his landlord's superior lien for rent.    The facts in relation to this claim are as follows:    One Bell, while the owner of the land, executed to Simmes a bond covenanting to make him a deed when the purchase price agreed upon should be paid. Simmes was let into possession under his contract to purchase; he made a small payment of purchase money, built houses and cleared seventy-five or eighty acres of land, all of which was wild and unimproved when he purchased. After the last installment of purchase money became due, Bell conveyed his interest in the land to Watson.    Bell testifies in general terms, without giving any particulars of the transaction, that there was an understanding between him and Simmes at that time that their contract was canceled. There was no written agreement to that effect; Simmes' notes for the purchase money were not surrendered to him,

*1. LANDLORD AND TENANT: Relation of.*

but were transferred to Watson; the bond for title was not taken up; Simmes was permitted to remain in possession as before without any claim upon him to pay rent; the lands were assessed to and the taxes paid by him, and he testified that the contract to purchase had never been rescinded, and that he had always held possession as owner. In the meantime Watson notified him that he had purchased the land from Bell and would enter into a new contract of purchase on better terms than the one he held, No new contract was made, but Watson permitted him to hold the land for several years after the conveyance from Bell, as purchaser, and with the sole expectation of collecting the purchase money. At this juncture, Simmes executed the mortgage to Pugh covering the cotton in dispute. A few weeks thereafter Watson took a note from Simmes for $400, payable in the fall of the same year. It specified that it was for rent of the land which Simmes was holding. It was for about twice as much as any witness who testified to the point thought the land would rent for. Simmes, who is an unlettered man, testified that it was the understanding between him and Watson that the amount to be paid on his note should be credited on his purchase, and that he made the suggestion about calling it a rent note under the impression that Watson would more surely get the money and so aid him in paying for the land. The court found, in effect, that the contract for purchase had not been rescinded and that the relation of landlord and tenant did not exist between Watson and Simmes. The conclusion is sustained by the rule controlling the decisions of *Mason v. Delancey*, 44 Ark., 444, and *Ish v. Morgan*, 48 Ib., 413. The fact that the note executed by Simmes to Watson recited that it was given for rent did not preclude Pugh from proving that it was not in fact given for that pur-

Giving rent note for purchase money.

pose. The case is analogous in that respect to *Williams v. Roth*, 45 Ark., 447.

**2. CHATTEL MORTGAGE: Description of property.** It is argued that Pugh's mortgage is void as to the cotton for uncertainty of description. It is described as "eight bales of cotton weighing 500 pounds each of the crop" which the mortgagor should raise in a designated locality.

In a contest between a mortgagee and one who has acquired a right adverse to the mortgage, a description in the instrument of a given number of articles out of a larger number is no description, where the means are not given for ascertaining what is intended. *Dodds v. Neel*, 41 Ark., 70; *Krone v. Phelps*, 43 Ib., 350. But where the number specified is more than the whole number of such articles there is no other property of the same kind from which a selection is to be made and, therefore, no uncertainty in the description. Jones Chat. Mortg., sec, 659; *Washington v. Love*, 34 Ark., 93; *Crosswell v. Allis*, 25 Conn., 301; *Kelly v. Reid*, 57 Miss., 89; *Draper v. Perkins*, Ib., 277. Here the description was of eight bales of cotton of the mortgagor's crop, when in fact his whole crop did not amount to so much. If the proof had shown that the crop amounted to more than eight bales and no particular bales had been appropriated to the mortgage, the result might have been otherwise.

Affirm.