TALLMAN v. UNION LOAN & TRUST COMPANY.

Opinion delivered December 24, 1923.

1.  CONTRACTS—WHAT LAW GOVERNS.—Contracts are governed by the law of the place where they are made, unless they, by their terms, are to be performed elsewhere, in which case they are governed by the law of the State in which they are to be performed.

2.  USURY—NOTE HELD TO BE ARKANSAS CONTRACT.—Where a note was executed and payable in this State, it is governed by the laws of this State as to usury.

3.  USURY—PAYMENT OF COMMISSION.—Where a borrower paid the lender 5 per cent. for advancing the money and executed a note for interest at 10 per cent. per annum, the note was usurious, and neither principal nor interest can be recovered.

Appeal from Arkansas Chancery Court, Northern District; *John M. Elliott*, Chancellor; reversed.

*George C. Lewis*, for appellant.

The note was signed, dated, delivered, made payable and the consideration paid in Arkansas, and it was therefore an Arkansas contract and governed by the laws of Arkansas. 39 Cyc. 899; 8 C. J. 92; 33 Ark. 645. The assignee of the note has no greater right than the payee. 104 Ark. 488. Even if the transaction was controlled by the laws of Indiana, it would still be usurious under the law of that State. See the rule laid down in 39 Cyc. 908, under such circumstances. To hold that such contracts were valid, even though valid in the State where made, would render the usury law of this State inoperative and useless. 8 L. R. A. 170. Knowledge of the borrower that usury was being exacted does not make him *particeps criminis* and estop him from pleading usury. 135 Ark. 582.

*C. E. Pettit* and *W. A. Leach*, for appellee.

The transaction was an Indiana transaction. There an excessive rate of interest does not render the contract void. A loan valid under the law of a State where made is valid here, even though usurious. 107 Ark. 73; 70 Ark. 493; 67 Ark. 252. The proposition to borrow the money was accepted in Indiana and the contract consummated

there by that act.   See 60 Ark. 269; 44 Ark. 220.   The intention of the parties controls, and that intention was plain that the contract was an Indiana contract.   See Wharton on Conflict of Laws, § 510a, 510b, 510c.   See also 226 S. W. 210; 39 Cyc. 897; 93 Am. Rep. 333; 26 A. S. R. 481; 37 Am. Rep. 533; 143 Mass. 129.   Citations covering the general principles pertaining to the efforts of courts to arrive at the real *bona fide* intention of the parties may be found at 39 Cyc. 898; 1 Wall. 298; 45 Fed. 743; 39 Cyc. 900-907; 39 Cyc. 891-2, 896, 897.

SMITH, J.   This is a suit by appellee against appellant to recover on the following promissory note:

"$6,000                        Stuttgart, Ark., June 8, 1921.

"One year after date I promise to pay to the order of A. P. Rice six thousand and no/100 dollars, for value received, payable at the First National Bank of Stuttgart, Ark., with interest from date at the rate of ten per cent. per annum until paid.   Demand, notice of protest and non-payment waived by makers and indorsers.

"E. TALLMAN."

Indorsements: "A. P. Rice."

There was a prayer also for the foreclosure of a lien upon $6,200 of notes pledged as collateral to the principal note.   The note was assigned to appellee, and the answer denied the assignment was for value and in the usual course of business, and pleaded usury.   Thereafter an amendment to the complaint was filed, alleging that the note evidenced an Indiana contract.   There was a decree in favor of the plaintiff, and the defendant, the maker of the note, has appealed.

The testimony established the following facts, much of which is undisputed:   Appellant is a resident of Stuttgart, Arkansas, and desired to borrow some money. Accordingly, he wrote a letter to M. F. Smith, his cousin, who resides in Cleveland, Ohio, and asked him to negotiate a loan.   Smith submitted the proposition to Rice, a resident of Indiana, who stated that he had some money which he would loan for ten per cent., after first

deducting five per cent. Upon being advised of the terms upon which Rice would make the loan, appellant wrote Rice the following letter:

"Mr. A. P. Rice.

"Dear sir: In accordance with the recent correspondence had through Mr. M. F. Smith, I hand you herewith my two blank notes, one for $5,000 and one for $6,000, each due one year after date. I also hand you two collateral notes * * *. I should like to have $6,000 instead of the $5,000 mentioned in your letter of June 1. However, if you care to let me have only the $5,000, that will be all right. Please retain the two collateral notes and return whichever one of the other notes you prefer to take to the Exchange Bank of this place, together with a draft for the amount of same, less the agreed discount of five per cent. Your instruction to the bank will be, of course, to turn over the draft to me when I sign the note, which the bank will then return to you. I will, of course, see that the note is properly stamped. The reason I am handling the transaction in this way is that I do not know whether you prefer to accept the $5,000 or the $6,000 note.        Yours truly,

"E. TALLMAN."

In reply Rice wrote the following letter: "I have decided to let you have the $6,000, and am forwarding draft Fort Dearborn National Bank, No. 21,626, for $5,750, also your note for $6,000, to the Exchange Bank, Stuttgart, Ark., with the instructions to turn this draft over to you on receipt of the inclosed note signed and stamped by you."

Appellant called at the bank, and signed and delivered the note to it, and the bank turned the draft over to him.

It was developed that some years ago appellant had indorsed a note, and that he and the maker thereof pleaded usury, when sued to enforce payment, and appellant admitted that he had a general knowledge of the usury laws, and he also testified that, in executing the

note, it was his purpose to execute a valid obligation. It was shown also that Rice had never been in Arkansas, and that this was the only transaction he had ever had in this State.

The decision of the court below is defended upon the ground that the transaction was an Indiana transaction, and therefore controlled by the laws of that State. The court below accepted this view, and rendered a decree for the $5,700 actually advanced and six per cent. interest thereon, it being the law of Indiana that, where a greater rate of interest than eight per cent. has been contracted for, the excess over six per cent. shall be deemed usurious, and may be recouped by the debtor when he is called upon for payment.

There are a number of interesting questions discussed in the excellent briefs in the case, but we find the preliminary question of fact decisive of the case, and we discuss it only. It is conceded by both parties that this contract, like any other, is to be governed by the law of the place where it was made, if it is not, by its terms, to be performed elsewhere; but if it is to be performed in a State other than that in which it was made, the law of the State in which it is, by its terms, to be performed must govern.

We think the testimony establishes the fact that the note sued on is an Arkansas contract, and must therefore be governed by the laws of this State.

The note is dated at Stuttgart, and is payable at the First National Bank in that city. It was actually signed at Stuttgart, and there delivered to the bank as Rice's agent, for transmission to him, and the money was actually paid to appellant in Stuttgart. It is true the money was paid by the bank in Stuttgart cashing a draft drawn on a bank in Chicago, but these circumstances are unimportant except in so far as they tend to show where the place of performance of the contract was. *Prima facie* the note is an Arkansas contract. It purports, on its face, to be a contract to be performed in this State,

and we think the testimony does not show that the parties intended to contract with reference to the laws of another State, and, if this be true, the note is tainted with usury, and there can be no recovery of either principal or interest. Rice testified that he made the loan in Indiana, and gave as his reason for so stating that it was there that he accepted the proposition to make the loan, and that the preliminary negotiations occurred in that State; but the consummated contract is the note, and, as we have said, it is an Arkansas contract.

Counsel cite numerous cases to the effect that it is within the power of contracting parties to establish the place according to the laws of which the validity and construction of a contract should be determined; and other cases to the effect that, when it is doubtful whether the contract is to be performed in one State, where its provisions are lawful, or in another State, where its provisions render it invalid, that it will be presumed that the parties intended that law to control which would uphold, rather than destroy, the contract.

Numerous cases dealing with these questions are collected in the note to *Midland Savings & Loan Co.* v. *Beats,* 150 Pac. 868, L. R. A. 1916-D, 745. But it is unimportant where the contract was made if it was to be carried out in this State, for, as was said by Mr. Justice FOLGER for the Court of Appeals of New York, in the case of *Dickinson* v. *Edwards,* 77 N. Y. 574, it would be a novel doctrine if the usury laws of a State could not be violated by a transaction agreed upon outside its bounds.

The note sued upon infringes the usury law of this State, and there can therefore be no recovery of either principal or interest. *German Bank* v. *DeShon,* 41 Ark. 331.

The decree of the court below will therefore be reversed, and the cause remanded with directions to dismiss the complaint.