BONNER *v.* STROUD BROTHERS' GIN.

Opinion delivered January 17, 1927.

1. MORTGAGES—CONSTRUCTION—WHAT LAW GOVERNS.—In construing and determining the priority of mortgages covering cotton to be grown in another State, where the contracts were to be performed, the courts must be governed by the laws of that State.

2. ACKNOWLEDGMENT—SUFFICIENCY.—A certificate of acknowledgment of a mortgage *held* valid under the laws of Oklahoma.

3. MORTGAGES—SUFFICIENCY OF DESCRIPTION.—Crop mortgages describing the crop as so many acres of cotton to be planted and grown by the mortgagor on a named person's land "in Poteau bottom in Leflore County, Oklahoma," *held* not void for uncertainty of description.

4. MORTGAGES—CERTAINTY OF DESCRIPTION.—Evidence that a mortgagor grew only 15 acres of cotton on a certain farm *held* to render certain a description in one mortgage as the crop grown on 30 acres of land and in another as the crop grown on 15 acres.

5. MORTGAGES—PRIORITY.—A junior mortgagee is not entitled to judgment against a senior mortgagee for conversion of the mortgaged property where it was not sufficient to pay the senior mortgages.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; affirmed.

STATEMENT OF FACTS.

This is an action by Joe Bonner against the Stroud Bros. Gin, a partnership, and Mamie Cleaver, to recover

$161.14 for the conversion of seed cotton claimed by the plaintiff. The answer justified the taking and converting of the seed cotton under two chattel mortgages executed by the person who planted and grew the cotton, duly transferred to Mamie Cleaver. The seed cotton in controversy was grown on the Mamie Cleaver farm, in LeFlore County, Oklahoma, during the year 1924.

The plaintiff introduced in evidence a chattel mortgage executed to him on the 25th day of May, 1924. The mortgage was duly acknowledged and filed for record in LeFlore County, Oklahoma. The mortgage was given to secure an indebtedness of $250 owed by Bud Hill to Joe Bonner. The property described in the mortgage was two horses, some plow tools, "and my entire crop, consisting of 15 acres of growing cotton, no acres of growing corn, to be planted and grown on Mamie Cleaver farm in said LeFlore County, State of Oklahoma, about 4 miles east from Peno, LeFlore County, Oklahoma, during the year 1924." Bud Hill failed to pay any part of the mortgage indebtedness.

Mamie Cleaver claimed the seed cotton in controversy under two chattel mortgages executed by Jefferson Hill to the Williams Horse and Mule Company, which were transferred to her. On the 24th day of December, 1923, Jefferson Hill executed a chattel mortgage on a bay mare mule "and all of my, or our, interest in the following described crops planted and grown by me, or us, by tenants, lessees and employees: 30 acres cotton; ............ acres corn; ............ acres potatoes; ............acres ............ on the following described lands, to-wit: On Mamie Cleaver's land near Poteau Bridge, 1 mile southwest Fort Smith, in Poteau Bottom, section ..........., township ..........., range ........., State of Oklahoma, 1/4 rent; said property now being within the county of LeFlore, State of Oklahoma."

The mortgage was duly signed by Jefferson Hill, and the acknowledgment of it reads as follows:

"Jefferson Hill, being duly sworn according to law, says that he is the sole and exclusive owner of all the

property mentioned and described in the foregoing chattel mortgage; that there are no chattel mortgages or liens of any kind whatsoever on any part of said property; and that each and every representation in the foregoing mortgage is true, and has been made for the purpose of securing a loan of money on said property; said loan being based upon said representations.

[Signed] "Jefferson Hill.

"Subscribed and sworn to before me this 24th day of Dec. 1923.   Kate Bell, notary public.

"My commission expires Feb. 15, 1925."

This mortgage was given to secure a note of even date with the mortgage for $193.

On the 13th day of February, 1924, Jeff Hill executed a mortgage to the Williams Horse & Mule Company on certain live stock and 15 acres of cotton to be planted and grown by him on Mrs. Mamie Cleaver's farm, in Poteau Bottom, LeFlore County, Oklahoma.   This mortgage was given to secure an indebtedness of $50, and no part of the mortgage debt has been paid.   The mortgage was signed by Jeff Hill, and the acknowledgment to it is as follows:.

"................ being first duly sworn according to law, says that he is the sole and exclusive owner of all the property mentioned and described in the foregoing chattel mortgage; that there are no chattel mortgages or liens of any kind whatsoever on any part of said property; and that each and every representation in the foregoing mortgage is true, and has been made for the purpose of securing a loan of money on said property; said loan being based upon said representation.

"[Signed]................................

"Subscribed and sworn to before me this 13th day of February, 1924.   [Seal]   Nina Garmon, notary public.

"My commission expires May 5, 1925."

According to the testimony of Mrs. Mamie Cleaver, Bud Hill, Jeff Hill and Jefferson Hill were the same person, and, during the year 1924, raised a crop of cotton on her farm in LeFlore County, Oklahoma.   Hill planted

about 40 acres of cotton, but most of it grew up in weeds and bushes, and some of it got under water. Hill became disheartened, and did not work more than 15 acres of the crop planted by him. He raised only two bales and a remnant of 300 ponds. After paying the expenses of picking, Mamie Cleaver got in all $161.14 for the cotton raised by Hill. Mrs. Cleaver gave the Williams Horse & Mule Company $225 for the transfer of the two mortgages to her.

The jury returned a verdict for the defendants, and the plaintiff has duly prosecuted an appeal to this court.

*John P. Roberts,* for appellant.

*W. L. Curtis,* for appellee.

HART, J., (after stating the facts). At the outset it may be stated that all the mortgages show that the cotton was to be planted and grown in the State of Oklahoma, and, by their terms, show that the contracts which they evidence were to be performed there. Hence in construing the mortgages and in determining their priority we must be governed by the laws of the State of Oklahoma. *Tallman* v. *Union Loan & Trust Co.,* 161 Ark. 614, 256 S. W. 379; *Guardian Life Insurance Co.* v. *Dixon,* 152 Ark. 597, 240 S. W. 25; *Wilson* v. *Todhunter,* 137 Ark. 80, 207 S. W. 221; and *Nelson* v. *Forbes & Sons,* 164 Ark. 460, 261 S. W. 910.

The first reliance by counsel for the plaintiff for a reversal of the judgment is that, although the two mortgages transferred to Mamie Cleaver were executed before the mortgage on the same property to the plaintiff Bonner, the acknowledgments to these two mortgages were so defective as to render them invalid as far as the rights of third persons are concerned. The acknowledgments to the two mortgages given by Hill to the Williams Horse & Mule Company and transferred by it to Mamie Cleaver are set out in our statement of facts, and need not be repeated here. A reading of the acknowledgments copied in our statement of facts will show that they are valid under the laws of Oklahoma. The body of each mortgage is in the usual form, reciting that it

is a mortgage, and is signed by the mortgagor. It is true that the certificate of acknowledgment is in the form of an affidavit, but the signature of the mortgagor to the mortgage is identified, and the acknowledgment to each mortgage shows that Hill stated that he was the sole and exclusive owner of all the property described in the chattel mortgage, and that every representation in the mortgage was true, and that the mortgage was executed for the purpose of securing a loan of money on the property. An acknowledgment in all essential respects the same as the one in the case at bar has been held valid by the Supreme Court of the State of Oklahoma. *First National Bank of Buffalo* v. *Devore*, 110 Okla. 283, 234 P., 734.

It is next insisted that the judgment should be reversed because the description of the property in the mortgages to the Williams Horse & Mule Company, which were transferred to Mamie Cleaver, are void for uncertainty of description of the cotton mortgaged. We do not agree with counsel in this contention. In *Wichita Mill & Elevator Co.* v. *Farmers' State Bank,* 102 Okla. 83, 226 Pac. 870, it was held that a description in a chattel mortgage which is sufficient to put a third person upon inquiry, which, when pursued, will enable him to ascertain the property intended to be included in said mortgage, is good, and parol evidence is admissible in order to show the particular property intended to be covered by the description in the mortgage. In *Watson* v. *Pugh,* 51 Ark. 218, 10 S. W. 493, it was held that a mortgage which described the property conveyed as ''eight bales of cotton weighing 500 pounds each, of the crop'' which the mortgagor should raise in a designated locality, is not void for uncertainty, where the whole crop did not amount to eight bales. See also Jones on Chattel Mortgages, 5 ed., §§ 55 and 55a.

It will be observed from our statement of facts that the mortgage of Hill to the Williams Horse & Mule Company to secure the $193 indebtedness describes the cotton as 30 acres to be planted and grown by Hill on Mamie Cleaver's land in Poteau Bottom, LeFlore County,

Oklahoma.    In the mortgage to secure the $50 indebtedness the description is 15 acres of cotton to be planted and grown by Hill on Mamie Cleaver's farm in Poteau Bottom, LeFlore County, Oklahoma.    The only element of uncertainty in the mortgage is that the mortgagor might plant and grow on Mrs. Mamie Cleaver's farm 45 acres of cotton; in which event, no separation having been made by the parties, it could not be ascertained what particular cotton was covered by each mortgage. According to the testimony of Mamie Cleaver, Hill planted 40 acres of cotton, but about 25 acres of it were overflowed and grew up in weeds and bushes. Hill did not work this part of his crop of cotton.    He only worked 15 acres of the amount planted, and the cotton in controversy was grown on the 15 acres.    Each mortgage provides that the cotton is to be planted and grown on Mamie Cleaver's farm.    That part of it which provides that the crop is to be grown on the Mamie Cleaver farm is as much a part of the description as that part referring to the planting of the cotton.    When it was shown that the entire crop of cotton thus planted and grown and subject to the description was not more than 15 acres, the description became definite and certain; hence there was no occasion for its separation from a larger mass.

The record shows that the mortgage to the plaintiff was executed on the same cotton subsequent to the execution of the two mortgages to the Williams Horse & Mule Company and transferred by it to Mamie Cleaver. The cotton obtained by Mamie Cleaver under the two mortgages held by her was not sufficient to pay the mortgage indebtedness, and it follows that the judgment of the circuit court was correct. It will therefore be affirmed.