VALLEYFIELD GIN COMPANY *v.* ROBINSON.

4-9056                                      227 S. W. 2d 168 .

Opinion delivered February 27, 1950.

*Holland & Taylor* and *Reid & Roy*, for appellant.

*Gene Bradley*, for appellee.

DUNAWAY, J. This appeal involves a determination of the rights in the proceeds of certain cotton grown in Dunklin County, Missouri, and sold in Mississippi County, Arkansas, as between three chattel mortgagees, one of whom also claims a landlord's lien for advances.

Suit was filed in the Mississippi Chancery Court by the Caruthersville Production Credit Association against the Valleyfield Gin Company and Jack Finley Robinson, doing business as Dixie Gin Company, for the alleged conversion of cotton grown in 1947 on 80 acres of land in Dunklin County, Missouri, by one Cecil Crenshaw, on which it was alleged plaintiff had a chattel mortgage to secure a balance of $901.98 and interest for money loaned Crenshaw to make that year's crop. Plaintiff will hereinafter be referred to as CPCA, and the defendants as Valleyfield and Dixie respectively. The defendants admitted buying Crenshaw's cotton, but denied the validity of plaintiff's mortgage. Both alleged the CPCA mortgage was void for uncertainty of description,

and in addition that plaintiff had waived any lien it may have had by consenting to sale of the cotton by Crenshaw. Each contended that it had a valid mortgage on crops of Crenshaw grown on separate 40-acre tracts farmed by this tenant, and that they had taken the cotton on account for money advanced by them, in good faith for value without actual notice of plaintiff's mortgage. Dixie also interposed the defense that it had taken an assignment of a rent contract from Crenshaw's landlord and that it therefore had a landlord's lien for advances, which took priority over all the chattel mortgages. Plaintiff and Valleyfield both denied the validity of the alleged assignment of the landlord's lien for advances. Valleyfield further alleged that in the event of any recovery by plaintiff it should be required first to satisfy its claim out of proceeds in the hands of Dixie.

The various chattel mortgages were recorded in this order: CPCA, March 6, 1947; Valleyfield, March 26, 1947; Dixie, May 15, 1947. The date of the alleged assignment of the landlord's lien to Dixie was January 23, 1947.

The Chancellor found that CPCA's mortgage was valid and that there had been no waiver of the lien thereof; that said mortgage was prior to that of Valleyfield and rendered judgment against this defendant for $708.85, the net value of the cotton received by this gin. The court further found that Dixie had a landlord's lien superior to plaintiff's mortgage and gave judgment against Dixie for $42, which was the value of cotton bought from Crenshaw by Dixie in excess of its loan to him.

Plaintiff and Valleyfield appeal from the decree insofar as it is adverse to them.

These are the questions for decision on this appeal:

(1) Was the description in CPCA's mortgage sufficient to create a valid lien on Crenshaw's crop or was the mortgage void for uncertainty?

(2) If the mortgage was valid, did CPCA waive its lien by permitting Crenshaw to sell his cotton?

(3) If CPCA had a valid mortgage lien which was not waived, did Dixie have a prior landlord's lien enforceable in Arkansas?

(4) If CPCA is entitled to recover from both gins, should it be required to proceed first against Dixie before seeking satisfaction from Valleyfield?

The mortgage of CPCA covered a truck, livestock and certain crops to be grown by Crenshaw. The provision of the mortgage which included the crops reads as follows:

"All crops of any and every nature whatsoever now or hereafter planted, grown, cultivated, produced, harvested or gathered by the mortgagor, or for him, or in which he may have an interest, during the year 1947, on the Copper-Ross farm, upon which Cecil Crenshaw resides, located 4-3 miles W and ........... miles ........... of Hermondale in the County of Dunklin, State of Missouri, consisting or to consist of at least 48 acres of Cotton, 22 acres of corn and beans, 1 acre of hay, 1 acre of sorghum, and 8 acres of pasture, being all crops which the mortgagor owns or may own in which he has or may have an interest in said state for said year."

During the year in question Crenshaw rented two 40-acre tracts of land. One was known as the "Marie Ross" farm, which was the farm mentioned in the mortgage to Valleyfield. The other 40-acre tract was owned by George M. Lee; it was as to this farm that Dixie's mortgage and claimed landlord's lien related. It is the contention of the gin companies that since there is no single farm known as the "Copper-Ross" farm as described in CPCA's mortgage, the mortgage is void for uncertainty.

The validity and effect of a mortgage of a chattel are determined by the law of the place where the chattel is situated at the time the mortgage is executed. *Bonner v. Stroud Bros. Gin,* 172 Ark. 569, 289 S. W. 766. The question of sufficiency of description in chattel mortgages has been before the courts in Missouri many times. The test of sufficiency of description was suc-

cinctly stated in the case of *Humphrey Savings Bank* v. *Carpenter*, 213 Mo. App. 390, 250 S. W. 618 at page 619: ". . . in such cases the description of the property in the mortgage must be such that a third person, aided by inquiries that the instrument itself suggests, could identify the property." In holding that parol testimony was admissible to show the sufficiency of a challenged description the court said in the case of *Bruce* v. *Kays*, 222 Mo. App. 77, 1 S. W. 2d 214 at page 215: "The rule seems to be that, if a chattel mortgage is not wholly insufficient as to description, and the description is such that a third party, aided by inquiries suggested by the instrument, can identify the property, then the chattel mortgage should be admitted in evidence and parol testimony received to identify the property."

Does the description in the mortgage in the instant case meet this test? At the trial it was shown that Crenshaw lived on the "Marie Ross" farm; that 80 acres was all the land he was farming; and that both places he was working were near Hermondale in Dunklin County. It is argued that no one inquiring for the "Copper-Ross" farm could ever have located the land owned by George M. Lee. That is true if the inquiry made were so limited. But certainly one attempting to locate in Dunklin County the 80 acres where Crenshaw lived and was making a crop, could by any reasonable effort have found the forty acre place where he resided and the additional land he was farming. Several cases are cited by the gin companies holding insufficient descriptions covering crops on certain amounts of land where the mortgagor was actually farming a greater acreage: for example, a mortgage was given on "75 acres of corn to be planted in the spring of 1921"; the evidence showed 100 acres of corn had been planted. This was held insufficient because there was no way of knowing which 75 acres were to be mortgaged. See *Klebba* v. *Missouri Meerschaum Co.*, 213 Mo. App. 390, 257 S. W. 174. But that is not the situation in the instant case. Here the proof is that 80 acres were all Crenshaw had planted; and the mortgage included all his crops to be grown on 80 acres in Dunklin County. In *White* v. *Meiderhoff*,

220 Mo. App. 171, 281 S. W. 101, a description was held sufficient in a mortgage covering 100 acres of wheat on a certain described farm, where in fact wheat was planted on 150 acres. The proof was that on one side of the road there was a 100-acre field and across the road another 50-acre field. After repeating the rule hereinabove discussed, the court said the question of sufficiency of description was for the jury to decide under all the facts and circumstances. In the instant case the Chancellor found the description sufficient. We think this finding is supported by the evidence; and that CPCA had a valid lien on all of Crenshaw's cotton.

Was this lien waived? The proof on this point showed that Crenshaw had sold practically all his cotton before CPCA knew of it. There is some dispute as to whether one of CPCA's agents then consented to the tenant's sale of the remaining few bales. CPCA's manager denied the agent's authority to consent, even if such consent had in fact been given by him, which the agent denied. As in *Moffett* v. *Kent,* (Supreme Court of Mo.) 5 S. W. 2d 395, the question of waiver here is one of fact. The Chancellor found that there had been no waiver. This finding is supported by the preponderance of the testimony.

The next question is whether Dixie had a landlord's lien for advances superior to the lien of CPCA's chattel mortgage. The facts in regard to the assignment to Dixie of the Lee-Crenshaw rent contract, as established by Dixie's witnesses, are these: The rent contract was entered into between Crenshaw and Lee on December 24, 1946. On January 23, 1947, Lee (by agent) made this endorsement on the back of said contract: "I hereby transfer my landlord lien to Dixie Gin Company for the purpose of them furnishing Cecil Crenshaw and they are to pay all indebtedness now owed by him, contract assigned in full. George M. Lee by (s) AMH 1/23/47." This transaction occurred after Robinson (*i. e.* Dixie) agreed to furnish Crenshaw for the year 1947 in order to get his ginning business. Prior to the assignment Robinson (*i. e.* Dixie), in December, 1946, agreed to pay Lee's agent $75 for some hay which Crenshaw was to

buy from him. Payment was made in March, 1947, after Crenshaw got the hay in December, 1946.

Valleyfield and CPCA earnestly insist that Dixie can have no lien for advances; that the statutory right to make advances to a tenant and the lien given therefor are personal to the landlord and cannot be transferred to another. Dixie claims to have become the landlord by the assignment of the rent contract; CPCA and Valleyfield deny that this assignment created the relationship of landlord and tenant between Dixie and Crenshaw.

Dixie's claim to a landlord's lien is based upon the following sections of Missouri Revised Statutes Annotated (1939):

Section 2976: "Every landlord shall have a lien upon crops grown on the demised premises in any year, for rent that shall accrue for such a year * * *."

Section 2977: "Every landlord shall have a superior lien, against which the tenant shall not be entitled to any exemption, upon the whole crop of the tenant raised upon the leased or rented premises to reimburse the landlord for money or supplies furnished to the tenant to enable him to raise and harvest the crops or to subsist; and may enforce his lien against the property wherever found."

Section 2988: "Any person to whom rent is due, whether he have the reversion or not or his personal representative or assignee, may receive such rent; whatever be the estate of the person owning the land, or though his estate or interest in it be ended."

The last quoted section was included in the Missouri Revised Statutes of 1855 and relates to other sections dealing generally with the remedies for the collection of any *rents* due. The landlord was given a lien for *rent* in Missouri (§ 2976, *supra*) as early as the Revised Statutes of 1835. It was held in *Matthews, Stubblefield & Co.* v. *Nation and Pulse,* 69 Mo. App. 327, that this section (2988) gave to the assignee of a landlord the same rights of action to recover rent as are given

the landlord, and the right to enforce a landlord's lien for rent. To the same effect that a landlord's lien for rent is made assignable by this statute see *Freeman* v. *Ruth,* 215 Mo. App. 398, 257 S. W. 500.

These cases are not decisive of the question in the case at bar for we are not considering an assignment of a landlord's lien for rent. The rent has been paid, and it is only a claimed lien for advances with which we are concerned. The statute giving a landlord a lien for advances was not enacted until 1925. Whether that lien is assignable, either as to advances already made by the landlord, or as to advances to be made in the future, has not been passed upon by the courts of Missouri.

We find only one case in which the rights given a landlord under the later statute are discussed. See *Kennard* v. *McCrory,* 234 Mo. App. 626, 136 S. W. 2d 710. In that case a landlord sought to recover from the purchaser of cotton from his tenant, the amount due him for supplies advanced in raising the crop. After pointing out that prior to 1925, a landlord could only proceed against a purchaser from a tenant for rent, and not for supplies advanced, the court stated that the remedies for enforcing the liens under the two statutes were not the same; that § 2977 gave only a right to enforce the lien against the property where found and created no personal right against the purchaser, as in the case of rent. At page 716 the court said:

"These sections create the lien and specifically provide for the remedy. They create a new and independent cause of action in derogation of the common law. * * * The statute both gives the right of action and provides the remedy where none existed at common law, and, where an action is brought under the statute, it can only be maintained subject to the limitations and conditions imposed thereby." While the question of assignability of a lien for advances was not discussed, the court clearly indicated that the only rights created by the statute were those specifically set out therein.

The general rule as stated in *Leslie* v. *Hinson,* 83 Ala. 266, 3 So. 443 at page 444 is: "But the landlord can neither relinquish nor transfer to another his right to make advances to the tenant, and thus vest in that other the lien which he could have asserted, had he made the advances. The right is statutory, and the statute does not embrace such a case."

Since we have concluded that under the law of Missouri a landlord's lien for advances cannot be assigned to cover advances to be made in the future by another, unless the relationship of landlord and tenant existed between Dixie and Crenshaw, Dixie had no lien superior to that of CPCA. Dixie's owner testified that he agreed to furnish Crenshaw in order to gin his cotton. The endorsement on the rent contract stated that the assignment was "for the purpose of them (Dixie) furnishing Cecil Crenshaw." The gin records introduced by Dixie showed each bale carried under this heading "Crenshaw; Emory; Lee." (Emory was Crenshaw's share-cropper.) Out of each of the eleven bales ginned and bought at Dixie one-fourth of the proceeds was taken out as Lee's rent. We think the conclusion supported by the record in this case is. that the assignment of Lee was intended as no more than a waiver of his lien for rent, made to induce Dixie to furnish his tenant. We hold, therefore, that CPCA's lien was paramount.

This brings us to the final question raised by Valleyfield. Should the equitable doctrine of marshalling be invoked? Valleyfield urges the application of the inverse-order-of-alienation theory. Dixie contends this would be appropriate only in a case involving land. It is unnecessary to discuss these contentions for we think the theory of apportionment as applied by the Supreme Court of Louisiana in the case of *White Company* v. *Hammond State Lines,* 180 La. 962, 158 So. 353, would be most equitable in the circumstances of this case. Both Dixie and Valleyfield could have avoided their present situation by checking the chattel mortgage records before advancing money to Crenshaw. As between themselves neither was prejudiced in any way by the ad-

vances of the other; all of the cotton bought by each gin came from the crop on the farm covered by its chattel mortgage. Hence there is no greater equity on the side of one than the other. They should be required to satisfy the judgment in favor of CPCA in the proportion which the net amount received by each gin bears to the total net proceeds of the mortgaged cotton sold to both by Crenshaw.

The decree is accordingly affirmed in part, reversed in part, and the cause remanded for action in accordance with this opinion.