158 So. 353

## WHITE CO. v. HAMMOND STAGE·LINES (BALTZELL et al., Interveners).

### No. 32584.

Nov. 26, 1934.

Rehearing Denied Jan. 7, 1935.

Monroe & Lemann and Robert G. Polack, all of New Orleans, and Mary Purser, of Amite, for appellant.

Reid & Reid, of Hammond, for appellee Baltzell.

O'NIELL, Chief Justice.

This appeal presents a conflict of liens on four automobile busses and a Cadillac sedan, which were seized by the sheriff in a foreclosure proceeding brought by the White Company against the Hammond Stage Lines, on a chattel mortgage.

The four busses are identified by their serial numbers, 138491, 139601, 165212 and 166764. The record does not show how or when the Hammond Stage Lines first acquired title to the busses numbered 138491 and 139601; but it appears that they were owned by the stage lines and were not incumbered by a chattel mortgage or vendor's lien at the time when the White Company obtained the chattel morgage and lien on which this foreclosure proceeding is founded. The bus numbered 165212 was sold by the White Company to the stage lines on the 30th of July, 1929, by a notarial deed in which the White Company reserved the vendor's lien and a chattel mortgage to secure the payment of $5,688, being the unpaid part of the price, represented by a promissory note, payable in eighteen monthly installments. The Cadillac sedan was sold by the White Company to the stage lines on the 20th of February, 1930, by a notarial deed in which the White Compa-

ny reserved the vendor's lien and a chattel mortgage to secure the payment of $1,010.13, being the unpaid part of the price, represented by a promissory note, payable in eleven monthly installments. The bus numbered 166764 was sold by the White Company to the stage lines on the 17th of March, 1930, by a notarial deed in which the White Company reserved the vendor's lien and a chattel mortgage to secure the payment of $7,172, being the unpaid part of the price, represented by a promissory note, payable in twenty-six monthly installments.

On the 29th of October, 1931, the Hammond Stage Lines, being in arrears on their payments, entered into an agreement with the White Company to "consolidate," as the witnesses say, the debts represented by the three notes into one debt, to be represented by one note, payable in monthly installments of $207 each. The monthly payments that were stipulated in the three original notes amounted to $670, which was more than the stage lines could pay every month. In consideration for the refinancing of the debts, and thereby reducing the amount of the monthly payments, the stage lines agreed to give a new chattel mortgage on the three vehicles which were already mortgaged separately, and to include in the mortgage the two vehicles, numbered 138491 and 139601, which were not then incumbered by a chattel mortgage. It appears that the unpaid balance on the three notes which were in arrears was then $3,442.23, to which the White Company added a so-called carrying charge of $286.77, making the amount of the new note $3,729, which was made payable in eighteen monthly installments, seventeen for $207 each, and the last one for $210. The new chattel mortgage was made in the form of a notarial act of sale of the five vehicles, by the White Company to the Hammond Stage Lines, for $3,729, for which the stage lines gave its promissory note, payable in eighteen monthly payments, secured by the vendor's lien and a chattel mortgage on the five vehicles.

On the 31st of May, 1933, the White Company brought this foreclosure proceeding, on the note for $3,729, the monthly payments being then in arrears; and the sheriff seized the five vehicles and advertised them for sale under the new chattel mortgage and vendor's lien affecting all of the vehicles.

Charles G. Baltzell, claiming a landlord's lien on the five vehicles, to secure the payment of a rent note for $1,100, with interest and attorney's fees, for rent of the premises in which the vehicles were kept by the stage lines, brought suit against the stage lines and obtained a writ of provisional seizure, under which the five vehicles were seized, constructively, by the sheriff. Baltzell obtained a judgment against the stage lines for the amount of his claim, with recognition of the lessor's lien. About the same time, Baltzell filed a petition of intervention or third opposition in this executory proceeding that was brought by the White Company against the stage lines, and prayed to be paid the amount of his claim out of the proceeds of the sale of the five vehicles, in preference to all other creditors of the stage lines.

The city of Hammond, claiming $196.43 for ad valorem taxes on the five vehicles, and having a judgment for $150 for past-due license taxes against the stage lines, filed a petition of intervention or third opposition,

praying for recognition of a lien on the five vehicles, and for payment of the city's claim in preference to all other creditors of the stage lines.

E. B. Penton, claiming $257.50 as salary for clerical work and $174.98 as assignee of claimants of wages for mechanical work on the five vehicles and for clerical work, filed a petition of intervention or third opposition, praying for recognition of a lien on the vehicles and for payment of his claim out of the proceeds of the sheriff's sale in preference to the other creditors of the stage lines.

Felix Tilley, claiming $211.15 as salary for services rendered as a clerk for the stage lines, filed a petition of intervention or third opposition, praying for recognition of a lien on the five vehicles and for payment of his claim out of the proceeds of the sheriff's sale in preference to the other creditors of the stage lines.

Charles G. Baltzell's rent claim was founded upon a contract of lease entered into between him and the Hammond Stage Lines after the chattel mortgages dated, respectively, the 30th of July, 1929, the 20th of February, 1930, and the 17th of March, 1930, were recorded, but before the chattel mortgage dated the 29th of October, 1931, was recorded. In other words, the landlord's lien claimed by Baltzell was inferior in rank to the original chattel mortgages of the White Company, affecting, respectively, the bus numbered 165212, the Cadillac sedan and the bus numbered 166764, but was superior in rank to the chattel mortgage securing the payment of the note for $3,729, dated the 29th of October, 1931, and affecting all of the five vehicles. Therefore the White Company

filed a supplemental petition, averring that the three original debts, represented by the three notes first obtained from the stage lines, were not extinguished or novated by the taking of a new note for the total amount of the three debts, on the 29th of October, 1931, and that the chattel mortgages dated, respectively, the 30th of July, 1929, and the 20th of February, 1930, and the 17th of March, 1930, and affecting, respectively, the bus numbered 165212 and the Cadillac sedan and the bus numbered 166764, were not canceled from the mortgage records, and were therefore yet in full force and effect. It was alleged in the supplemental petition that, at the time of the so-called consolidation of the three debts into one debt, the balance due on the bus numbered 165212 was $1,646.71, the balance due on the Cadillac sedan was $332.74, and the balance due on the bus numbered 166764 was $1,862.78. These figures amount to $3,842.23, which is more than the amount of the new note. No explanation of the discrepancy has been made or attempted; but that is perhaps not important now. It was alleged also in the supplemental petition that, after the suit was filed, two payments of $207 each and one payment of $80 were made by the stage lines, and that the unpaid balance due to the White Company was therefore $2,200, instead of $2,694, as claimed in the original petition. It was alleged in the supplemental petition that the balance then due on the bus numbered 165212 was $819.97, that the balance due on the Cadillac sedan was $165.68, that the balance due on the bus numbered 166764 was $927.58, and that to these sums should be added the so-called carrying charge of $286.77, making the total claim $2,200, for which the White Com-

pany prayed for judgment, with recognition of the vendor's lien on the three vehicles. We observe that the extent of the reduction in the amount of each one of the three notes is in the same ratio exactly that the total amount alleged to have been paid bore to the total amount of the indebtedness; from which it might well be inferred that the payments which were made after the 29th of October, 1931, were first applied to the new note for $3,729, and were afterwards applied, pro rata, to the old notes, by the White Company, when the company found it necessary to file the supplemental petition on the old notes.

The district judge, after trial of the oppositions, gave judgment in favor of all of the opponents, ordering their claims paid out of the proceeds of the sheriff's sale in the following order: First, the claim of the city of Hammond for taxes; second, the claims of E. B. Penton and Felix Tilley, concurrently; and, third, the claim of Charles G. Baltzell. The judgment provided further that the claim of the White Company should be paid out of the balance of the proceeds of the sheriff's sale, if there should remain a balance, after payment of the claims of the opponents and after deduction of the court costs and any taxes that might be due to the parish of Tangipahoa. The White Company has appealed from the decision.

■ The main dispute is between the White Company and Charles G. Baltzell, whether the chattel mortgage of the White Company, or the lessor's lien of Baltzell, is superior in rank. It is well settled, and not disputed, that a lessor's lien is of higher rank than a vendor's lien on the movable property of the lessee in the leased premises. A chattel mortgage, however, according to the fourth section of Act No. 198 of 1918, p. 373, is "superior in rank to any privilege or lien arising subsequently thereto"—that is, arising after the recording of the chattel mortgage. A lessor's lien, therefore, is superior in rank to a chattel mortgage if the lessor's lien exists before the mortgage is recorded, but is inferior in rank to the chattel mortgage if the lessor's lien arises after the mortgage is recorded. Youree v. Limerick, 157 La. 39, 101 So. 864, 37 A. L. R. 394; Comegys v. Shreveport Kandy Kitchen, 162 La. 103, 110 So. 104, 52 A. L. R. 931. It follows that, if the indebtedness represented by the three notes dated, respectively, July 30, 1929, February 20, 1930, and March 17, 1930, given by the Hammond Stage Lines to the White Company, and secured by chattel mortgages affecting, respectively, the bus numbered 165212 and the Cadillac sedan and the bus numbered 166764, was novated by the giving of the new note for $3,729, dated October 29, 1931, and secured by a chattel mortgage on the five vehicles, the chattel mortgage of the White Company on the five vehicles, securing the payment of the $3,729, is inferior in rank to the lessor's lien. On the other hand, if the original indebtedness was not novated by the transaction made on the 29th of October, 1931, the White Company has a superior lien on the bus numbered 165212, to secure the payment of the balance due on that bus, and a superior lien on the Cadillac sedan, to secure the payment of the balance due on that car, and a superior lien on the bus numbered 166764, to secure the payment of the balance due on that bus.

The question whether novation resulted when the new note was given by the stage lines to the White Company, on the 29th of October, 1931, depends upon whether the parties intended to extinguish the old debt and to substitute a new one in its place. Rev. Civ. Code, arts. 2185, 2187, 2190. Although novation does not take place as a necessary consequence of a creditor's taking a new note in substitution of one which he returns to the debtor, novation does take place in such a case if the circumstances surrounding the transaction show, or if the character of the transaction itself shows, that the parties intended to extinguish the existing debt and to substitute a new one in its place. That is because every one must abide the legal consequence of what he actually and intentionally does. We infer from the evidence in this case that the party who represented the White Company in the substitution of the new note and chattel mortgage for the three old notes and chattel mortgages did not know that the mortgaged vehicles were affected by a landlord's lien which was inferior in rank to the old chattel mortgages but which would be superior in rank to a new chattel mortgage. In that sense, it is true that the representative of the White Company did not intend to lessen the security of the company for the collection of its claim. But the evidence is convincing that the representative of the White Company did intend that the indebtedness represented by the three notes should be extinguished and that the new note should represent a new indebtedness. The most convincing feature of the transaction, in that respect, is that it was made in the form of a sale of the five vehicles, by the White Company to the Hammond Stage Lines, with recognition of the vendor's lien, besides the granting of a chattel mortgage. A vendor's lien cannot be created otherwise than as the result of a sale. The representative of the White Company must have taken title to the five vehicles, or must have intended to take title to them, in order to retransfer them to the Hammond Stage Lines and thereby obtain a vendor's lien, as well as a chattel mortgage, in favor of the White Company. The advantage which the White Company stood to gain thereby was not only to obtain a vendor's lien and chattel mortgage on two more busses, but also to obtain a vendor's lien and chattel mortgage which would incumber each and every one of the five vehicles for the payment of the whole debt. As it was before, each one of the three of the vehicles was incumbered only for the payment of the balance of the price of it, but not for the whole indebtedness of $3,442.23, owed to the White Company. The new debt, $3,729 (including the so-called carrying charge of $286.77), was the price for which the White Company reconveyed the five cars to the Hammond Stage Lines. The old debt was extinguished by the White Company's taking title to the cars in order to reconvey them to the stage lines. It is true that the White Company did not return the three old notes to the stage lines; hence the chattel mortgages securing the payment of the old notes were not canceled. The president and the secretary of the stage lines testified that the agent who represented the White Company in the transaction promised to return the old notes to the stage lines as soon as he could have them returned from Cleveland, Ohio, where they were said to be. That was denied by the agent and by

another employee of the White Company, who testified that the agreement was that the company should retain the old notes. The testimony of the president and of the secretary of the stage lines, on that subject, is corroborated by the circumstances and the probabilities of the case. It is not likely that the officers of the stage lines would have consented that the three negotiable instruments should remain outstanding to represent a debt for which a new negotiable instrument was given, especially as the record shows that it was customary for the White Company's dealer in New Orleans, who sold the cars to the stage lines, to transfer such notes to a finance company. There was no reason why the representative of the White Company, in obtaining the new note, should desire to retain the old notes; for, as far as the record shows, he had no knowledge or thought of there being a landlord's lien or any other lien than the White Company's lien on the mortgaged vehicles. Our conclusion, therefore, is that the landlord, Charles G. Baltzell, is entitled to be paid the amount of his claim out of the proceeds of the sheriff's sale of the cars, in preference to the claim of the White Company.

██ The judgment appealed from is correct in so far as it orders the sheriff to pay first, and in preference to all other claims, the taxes due to the city of Hammond, including the license taxes for which the city has a judgment against the Hammond Stage Lines. Section 28 of Act No. 171 of 1898, p. 420, provides that all unpaid license taxes shall be secured by a first mortgage or lien on both the movable and the immovable property of the debtor. And section 49 of Act

No. 170 of 1898, pp. 369, 370, makes it the duty of a sheriff, under penalty of personal liability, whenever he seizes any personal property, "to pay at once all the taxes that may be due or become due upon the same." It appears that the White Company attempted, by a summary proceeding in the district court, to compel the sheriff to apportion his deduction of the taxes so that each vehicle would bear its just proportion of the burden, according to the assessments or values; and the White Company complains now of the refusal of the judge to order the apportionment. Although all of the movable property of a tax debtor is liable for the payment of the taxes levied on any part of the property, nevertheless the collection of the taxes on all of such property should be equitably apportioned when that is necessary to avoid an injustice to a third party having a lien on only a part of the property, and when the apportionment can be made without interference with the collection of all of the taxes that are due. The record in this case does not contain sufficient data to determine whether an apportionment of the taxes can be made, according to the assessments, without prejudice to the city of Hammond. If the apportionment can be so made, and is necessary to avoid a discrimination against any one of the claimants of a part of the proceeds of the sheriff's sale, the sheriff, who is ex officio tax collector, must make the apportionment when this case is remanded for a proper distribution of the proceeds of the sale.

██ The White Company is entitled to be paid in preference to the claims of E. B. Penton and Felix Tilley, out of the proceeds of the sheriff's sale, because there is no evi-

dence that the liens claimed by Penton and Tilley, if in fact either of them has a lien, arose before the White Company's mortgage, dated the 29th of October, 1931, was recorded. In fact, the record leaves very little doubt that the services for which Penton and Tilley claim a lien on the vehicles were not rendered as long ago as the 29th of October, 1931. It is very doubtful whether either Penton or Tilley has a lien on the vehicles; but, since we have decided that their claims are subordinate in rank to the claim of the White Company, and since that decision puts Penton's and Tilley's claims behind the claim of the landlord, Baltzell, it is a matter of no concern to any one else whether Penton or Tilley has or has not a lien on the vehicles. The Hammond Stage Lines, against whom the judgment was rendered in favor of Penton and Tilley, has not appealed; hence the judgment in that respect is final.

The judgment appealed from is ordered amended so that the sheriff shall pay, out of the proceeds of the sale or sales of the vehicles which were seized in this case, as far as such proceeds will pay, first, the claim of the city of Hammond for taxes, including the judgment for license taxes; second, the claim of Charles G. Baltzell for rent; third, the note of the White Company, for $3,729, with the stipulated interest and attorney's fees; and, fourth and concurrently, the claims of E. B. Penton and Felix Tilley. These payments are to be made after deduction of any taxes that may be due to the state or parish and the costs of court. As amended, the judgment is affirmed. The case is ordered remanded to the district court for a distribution of the proceeds of the sale or sales according to the opinion now rendered.