BOWES, Judge.
Dr. Faye Ellen Bell, defendant/appellant (hereinafter Dr. Bell) appeals a judgment of the district court ordering her to pay the plaintiff, Causeway Equipment, Inc. (hereinafter Causeway) the sum of $31,984.15, together with legal interest and costs. Causeway has answered the appeal essentially requesting an increase in the amount awarded. For the following reasons, we annul and set aside the judgment of the district court and remand the matter.
In its reasons for judgment, the trial court skillfully outlined the findings of fact, which we quote at length and adopt:
Dr. Edward Mernin, a chiropractor, is the president and sole shareholder of Causeway Equipment, Inc., plaintiff corporation, which is engaged in the leasing of chiropractic clinics, equipment, and supplies. Mernin and the defendant, Dr. Faye Ellen Bell have been business associates since 1983 when Bell leased a chiropractic clinic in Slidell from Causeway. Following the closing of the Slidell clinic Bell operated Mernin’s chiropractic clinic in Alexandria. In 1984, Bell left Louisiana and moved to Houston, Texas to further her chiropractic training.
In 1985, Bell telephoned Mernin and related that she was having financial difficulties and was unemployed. He told her he was in the process of opening a chiropractic clinic in Boutte which she could operate if she wanted to return to Louisiana. She agreed, and he sent her money to recover her automobile which had been repossessed and also advanced her sums to cover her moving expenses. In March of 1985 Bell returned to Louisiana to prepare to open the Boutte clinic. On March 22, 1985, Bell signed a three year commercial real estate lease with a third-party landlord for the rental of her office space in the Majoria Shopping Center in Boutte.
On June 1, 1985, Bell and Causeway entered into a five year lease in the amount of $84,896.00 for the lease of “professional medical, X-ray and office equipment and furniture.” Section 25 of the lease stipulates: “The equipment is, and shall at all times remain Lessor’s property; Lessee shall have no right, title or interest therein except as expressly set forth in this lease.” Attached to the lease was a list of all the equipment that Bell was to receive and the value thereof. The lease called for a rental of $2,275.00 per month. (See P & D exhibit 1.)
On July 3, 1985, Causeway received a loan for $84,566.16 from Peoples Bank & Trust Co. of St. Bernard. As collateral for the loan, Causeway assigned its equipment lease with Bell to the bank.
Dr. Bell opened the clinic in July of 1985, and, on July 6, 1985, she entered *994 into a “Purchase and Consultation Agreement” with Dr. Mernin personally, in which she agreed to pay him 10% of her gross income as purchase price for the practice. He agreed to assist her in business procedures relating to the practice. The Purchase and Consultation Agreement is not the subject of the present litigation.
In the fall of 1985, she began to question the amount she was being charged for leasing the equipment. She did not feel the equipment was worth $84,896.00. In addition, she related that certain items of equipment which were specified in the lease were not provided to her and she was expending her own funds in order to procure the equipment she needed to operate the practice. Bell made nine payments on the June 1985 equipment lease, and then fell behind on that lease and the July 1985 Purchase and Consultation Agreement.
She hired an accountant, J.F. Lorio, to review the equipment lease and the figures contained therein. Between November of 1985 and March of 1986, Dr. Bell, her accountant and Dr. Mernin met and began negotiations toward the execution of a new lease. On February 20, 1986, Dr. Mernin wrote Dr. Bell to clarify the agreement reached between them. (P & D Exhibit 3).
The letter sets out the agreement that Dr. Mernin would cancel the July 1985 equipment lease in the amount of $84,-896.00, the November 16,1985 equipment lease in the amount of $76,950.56[1] and all and all late payments and interest for a cash payment by Dr. Bell of $65,000.00. The letter specifies that if Dr. Bell was not able to make the cash payoff by March 5, 1986, then the full amount due Causeway would be brought current and a new equipment lease executed.
On March 18, 1986, the parties executed a contract in the amount of $78,-500.00 based on the computation contained in Dr. Mernin’s February 20, 1986 letter.[2] The new contract provided for 60 monthly payments of $2,033.15, and a residual payment of $3,140.00. Unlike the June 1985 lease, which provided that Bell would have no right, title, or interest in the property, this agreement provides *995 that ownership of the equipment is as follows:
7. OWNERSHIP OF PROPERTY; For valuable consideration, receipt whereof is hereby acknowledged, User grants to CEI a security interest to secure payment of all sums called for herein upon said equipment and any and all additions, accessions, and substitutions therefor. Except for the security interest granted thereby, User shall be deemed the owner of said equipment for all purposes, and User will defend the equipment against all claims and demands of all persons at any time claiming the same or any interest therein.
After the initial payment of $4,066.30 on the March 1986 contract, Bell made three payments of $2,033.15 each to Causeway and pursuant to Peoples Bank’s June 26, 1986 letter (D-17), she made one final $2,033.15 payment to Peoples Bank of St. Bernard on August 12, 1986. On December 28, 1987, Causeway filed suit against Bell seeking to accelerate the payments in accordance with the terms of the March 1986 agreement and for a return of the equipment. Bell relinquished possession of some of the equipment in August, 1989.
Although the parties have continually referred to the contract of March 18, 1986 as an equipment lease purchase agreement, since the contract provides for a transfer of title to Bell with Causeway reserving only a security interest therein, the contract is actually a credit sale with an acknowledgment of other indebtedness.
The Court made the following dispositions:
Bell and Causeway consented to dissolution of the sale as to some of the items of equipment. She will be ordered to return the remaining equipment she has in her possession, and will be given credit for amounts she proved she paid for the equipment to various vendors.
The Court also found that Causeway was entitled to recover several items according to the terms of the agreement:
Renovation $24,542.24
Cash advances 8,946.41
Arrearage on 6/1/85 lease 15,606.72 Interest 780.82
Dr. Bell was given certain credits for sums paid, resulting in the final award of $31,984.15 by the Court.
We find it unnecessary to address the issues raised on appeal by either party because it is clear from the record that the judgment below was granted in the absence of an indispensable party, i.e., Peoples Bank of St. Bernard.
Evidence at trial proved that not only had Dr. Mernin, or Causeway, assigned the proceeds of the June, 1985, lease to Peoples Bank, but also granted a chattel mortgage on the property which was the subject of that lease. The letter of February 20, 1986, discussed by the trial court herein-above and reproduced here as Appendix I, discloses a novation, or attempted novation, of that June 1985 lease. We find that the following Articles of the Louisiana Civil Code are applicable:
Art. 1879. Extinguishment of existing obligation
Novation is the extinguishment of an existing obligation by the substitution of a new one. Acts 1984, No. 331, Sec. 1. Art. 1880. Novation not presumed The intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed.
Art. 1881. Objective novation Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no novation.
Novation takes place also when the parties expressly declare their intention to novate an obligation.
Mere modification of an obligation, made without intention to extinguish it, does not effect a novation. The execu *996 tion of a new writing, the issuance or renewal of a negotiable instrument, or the giving of new securities for the performance of an existing obligation are examples of such a modification.
Our Supreme Court discussed novation in Scott v. Bank of Coushatta, 512 So.2d 356 (La.1987) and stated therein:
Defined simply, in the 1984 revisions to our Civil Code, a novation consists of the extinguishment of an existing obligation by the substitution of a new one. La.Civ.Code Ann. art. 1879 (West 1987); Ouachita Nat’l. Bank in Monroe v. Williamson, 338 So.2d 172 (La.App. 2d Cir.1976). Prior to 1985, a novation was said to be a contract “consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place.” La.Civ.Code Ann. art. 2185 (West 1952) (repealed 1984).10
Normally, a novation takes place in one of three ways: (1) when a debtor contracts a new debt to his creditor, which new debt is substituted for an old one, which is extinguished; (2) when a new debtor is substituted for the old one, who is discharged by the creditor; and (3) when by the effect of a new engagement, a new creditor is substituted for the old one, with regard to whom the debtor is discharged. La.Civ.Code Ann. art. 2189 (West 1952). Planiol notes that every novation presupposes: (1) the existence of a debt to be extinguished; (2) the creation of a new debt; (3) a difference between the two successive obligations; (4) the will to extinguish the first; and (5) the capacity to dispose of the credit. Planiol, Traite Elementaire De Droit Civil 1 § 532 (1959). The extinguishing effect of the novation is comparable to that of the defense of payment. Id. at § 548.
[[Image here]]
The most important factor in determining whether a novation has been effected is the intent of the parties. Placid Oil [Co. v. Taylor] 325 So.2d [313] at 316 [(La.App. 3rd Cir.1975)]; Midlo and Lehmann v. Katz, 195 So.2d 383 (La.App. 4th Cir.1967). Thus, a novation may occur where the intent of the parties, the character of the transaction, the facts and circumstances surrounding the transaction and the terms of the agreement reveal a desire to effect a novation. Cane River [Shopping Center v. Monsour] 443 So.2d [602] at 604 [(La.App. 3rd Cir.1983) ]; Placid Oil, 325 So.2d at 316. “Although novation does not take place as a necessary consequence of a creditor’s taking a new note in substitution of one which he returns to the debtor, novation does take place in such a case if the circumstances surrounding the transaction show ... that the parties intended to extinguish the existing debt and to substitute a new one in its place.” White Co. v. Hammond Stage Lines, 180 La. 962, 158 So. 353, 356 (1934).
A reading of the letter from Dr. Mernin to Dr. Bell dated Feb. 20, 1986, in evidence, and referred to above, convinces us that Dr. Mernin and Causeway and Dr. Bell intended a novation. The old (June 1985) lease obligations were purportedly extinguished by the creation of the new agreement, which contained new elements — the $8,946.41 loan and the $15,000 “origination fee” — amongst the. added obligations. However, it appears from the record on appeal that Causeway lacked the capacity to dispose of the obligation of the second lease, having pledged the lease to Peoples Bank. See Scott, supra. Under the pledge agreement, it was agreed:
CAUSEWAY EQUIPMENT, INC., does hereby authorize, direct and instruct DR. FAYE E. BELL, its successors and assigns to pay to the said Peoples Bank and Trust Company of St. Bernard, the amounts due and owing or to become due and owing, as aforesaid.
AND NOW, the said CAUSEWAY EQUIPMENT, INC. does name, constitute and appoint Peoples Bank & Trust Company of St. Bernard, as their true and lawful attorney, irrevocably and with full power of substitution, for the sole use and benefit of said Peoples Bank and Trust Company of St. Bernard, to ask, demand, sue for, collect, receive, compound and give acquittance for the said *997 monies due or to become due by the said DR. FAYE E. BELL, as aforesaid.
Part of the award sought by Causeway and granted by the court was interest on “arrearages” under the June 1985 lease. Peoples Bank, as assignee, is entitled to all proceeds of that lease.
LSA-C.C.P. art. 698 mandates as follows:
Assignor and assignee
An incorporeal right which has been assigned, whether unconditionally or conditionally for purposes of collection or security, shall be enforced judicially by:
(1) The assignor and the assignee, when the assignment is partial
(2) The assignee, when the entire right is assigned.
The assignee, Peoples Bank, is therefore the proper party to seek judicial enforcement of rights under that lease. With regard to that portion of the judgment for interest on those arrearages, Peoples Bank was an indispensable party. Cf. First Municipal Leasing Corp. v. State, 394 So.2d 282 (La.App. 1 Cir.1979), writ denied 395 So.2d 810 (La.1980), appeal after remand, 422 So.2d 1182 (La.App. 1st Cir.1982), writ denied 427 So.2d 867 (La.), 427 So.2d 1197 (La.1983).
Insofar as we can ascertain from the record on appeal, the assignment and chattel mortgage are still in effect.
Indispensable parties to an action are those whose interests in the subject matter are so interrelated that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action. La.C.C.P. art. 641. The failure to join an indispensable party may be noticed by an appellate court on its own motion. La.C.C.P. arts. 645 and 927. [Emphasis supplied]
Blanchard v. Naquin, 428 So.2d 926 (La.App. 1 Cir.1983), writ denied 433 So.2d 162 (La.1983).
Also Gutierrez v. Carmardelle, 89-CA-802 (La.App. 5 Cir., October 2, 1990).
Since La.C.C.P. art. 641 provides that no adjudication of an action can be made unless all indispensable parties are joined therein, the appropriate action to be taken when an appellate court notices the absence of indispensable parties is to remand the case to the trial court for the joinder of the indispensable parties and a retrial of the case. Edmonson v. Abell, 423 So.2d 100 (La.App. 1st Cir.1982); Guice v. Modica, 337 So.2d 302 (La.App. 2nd Cir.1976).

Blanchard, supra.

The pleadings, evidence, and testimony (in short, the record on appeal) convinces us that at a minimum, this case must be remanded for the joinder of Peoples Bank as an indispensable party.[3] A complete adjudication of the litigated matters cannot be had in the absence of Peoples Bank.
For the foregoing reasons, the judgment appealed from is annulled and set aside, and the case is remanded to the district court for the purpose of joining Peoples Bank as an indispensable party plaintiff, and for retrial in accordance with this opinion.
Each party is taxed his own costs on appeal.
ANNULLED AND SET ASIDE; REMANDED.
*998 APPENDIX
[[Image here]]
*999 [[Image here]]

. An unsigned copy of this lease was introduced as an exhibit at the trial. The November 16, 1985 lease was never entered into by the parties.

. The letter set out the computation as follows:.
Equipment $16,756.29
for typewriter less credit 300.00
for x-ray machine less credit - 1,332.38
Equipment balance $15,123.91
Renovation + 24,542.14
Cash advances + 8,946.41
sub-total 48,612.46
for Alexandria Clinic Sale Commission less credit - 1,500.00
$47,112.46
for setting up practice Origination fee + 15,000.00
$62,112.46
on arrearage payments July Interest + 780.82
sub-total $62,893.28
Arrearage + 15,606.72
@ .0259 = 2,033.15 monthly payment, 60 months (lease factor) Plus a residual payment at the end of the lease of $3,140.00. Total $78,500.00
The March 18, 1986 contract refers to the "equipment" as “1 lot of professional medical x-ray and office equipment 178,500.00.”

. Moreover, it appears that the validity of the second contract, in whole or in part, is seriously in question considering the fact that it was entered after Peoples Bank received assignment of the June lease. See Scott, supra.