1 .PETTIGREW, J.
Ocwen Federal Bank, FSB F/K/A Berkeley Federal Bank & Trust FSB (“Ocwen”) appeals from a trial court judgment granting a motion to enforce settlement filed by H. Stern Investments, L.L.C. (“H. Stern”). For the reasons that follow, we reverse.
FACTS AND PROCEDURAL HISTORY
On December 20, 2001, Ocwen filed a petition for executory process against Ne-miah Hawkins and Bernadine Cage Hawkins seeking to enforce a note and mortgage previously executed by Mr. and Mrs. Hawkins on certain immovable property in East Baton Rouge Parish. The trial court entered a writ of seizure and sale on January 3, 2002, ordering the sheriff to seize *760 and sell the property in question. While the foreclosure action was pending, but before the sheriffs sale, Mr. and Mrs. Hawkins apparently contacted Ocwen and inquired about what it would take to reinstate the loan. In a February 18, 2002 “LOAN REINSTATEMENT SCHEDULE” addressed to Nemiah Hawkins, Ocwen indicated that the “total amount due on the ... loan as of 02/28/02” was $7,894.89.
Meanwhile, on February 26, 2002, a “SALE SUBJECT TO EXISTING MORTGAGE” was filed in the public records for East Baton Rouge Parish. According to this document, H. Stern purchased the property in question from Mr. and Mrs. Hawkins for the sum of $3,600.00 and assumed the aforementioned mortgage held by Ocwen. The parties agreed to the following terms:
The consideration for this sale is $3,600.00 and other valuable consideration which the SELLER acknowledges receiving $3,600.00 in the form of cash, and other valuable consideration and subject to that certain mortgage obligation assumed and described as follows: PURCHASER assumes and agrees to hold the SELLER, free and harmless from the payment of the balance due on that certain Assignment of Mortgage made and executed by NEMI-AH HAWKINS and BERNAJDINE CAGE HAWKINS to the order of GULF COAST INVESTMENT CORPORATION dated December 9, 1980, in the principal sum of [$]43,250.00, recorded in Book 419, Pages 9409, of the Mortgage Records of East Baton Rouge Parish. The parties hereto acknowledge that the principal balances due by SELLER on the notes secured by the aforedescribed Mortgages as of this date, is the sum of $7,394.89, plus back payments, attorneys’ fees, and sheriffs costs.
Thereafter, on April 15, 2002, on the motion of Ocwen and “upon showing that all costs and commissions due” were “paid in full,” the trial court dismissed, without prejudice, the |3petition for executory process and ordered that the sheriffs seizure and sale of the property in question be canceled.
In February 2003, almost one year after the dismissal of Ocwen’s petition for execu-tory process, H. Stern filed a motion to enforce settlement in the same docket number previously assigned to the execu-tory process proceeding. H. Stern’s motion contained the following pertinent allegations:
1.
This matter arose on a Petition for Executory Process filed by Ocwen ... regarding immovable property that secured certain debt under a mortgage, as is set forth in said Petition for Executo-ry Process.
2.
H. Stern ... is successor in interest to the original named defendants in this matter ... having acquired the mortgaged property pursuant to that certain Sale Subject to Existing Mortgage executed on February 22, 2002 ....
3.
Ocwen’s petition at paragraph 5 in this very lawsuit, made the judicial declaration that the debt principal secured by the mortgage on the above-described property was $40,491.24, plus accrued interest. Ocwen’s judicial assertion in that pleading is hereby incorporated by reference.
4.
During pendancy of the Hawkins Suit ... H. Stern ... entered into negotia *761 tions between the parties of the Hawkins Suit. Counsel for Ocwen represented to your plaintiff in writing that the outstanding amount to make the mortgage debt current as of February 18, 2002 amounted to $7,894.89.
5.
Based on Ocwen’s representations, H. Stern ... acquired the above-described property, and paid the $7,394.89 to bring the outstanding mortgage current.
6.
The payment of the $7,394.89 in fact ended the foreclosure in this litigation. The payment of $7,394.89 pursuant to Ocwen’s written representations through counsel arises to the level of transaction or compromise under Civil Code articles 3071 et seq.
7.
Ocwen has since asserted that there was another $28,350.52 that was secured by the property, in addition to the principal of $40,491.24 described above.[1]
Ji8.]
Ocwen is estopped from asserting a mortgage debt principal balance above the $40,491.24 they represented was the outstanding principal secured by said mortgage.
WHEREFORE, H. Stern ... respectfully prays that this Court issue rule to the plaintiff, Ocwen ... to show cause why the settlement of this matter should not be enforced.
In addition to the motion to enforce settlement, H. Stern also filed what is purported to be an answer to Ocwen’s petition for executory process, which petition had previously been dismissed by Ocwen.
Ocwen opposed H. Stern’s motion to enforce settlement and filed an exception raising the objection of no right of action. Ocwen argued that because there was no contract or privity of contract between Ocwen and H. Stern, H. Stern had no standing to bring this claim and the motion should be dismissed.
The matter proceeded to hearing before the trial court on April 21, 2003. After hearing from the parties and considering the evidence in the record, the trial court found in favor of H. Stern, concluding as follows:
The court is going to enforce the settlement, the court being of the opinion that it is a compromise, well favored in the law. The parties entered into it. You stand in the shoes of your ancestor in title, and in reviewing all those documents, the court is of the opinion that you have a right to enforce the settlement.
This matter was taken out of foreclosure by the payment of the seven thousand some hundred dollars and this court will enforce that agreement.
In a judgment signed on April 24, 2003, the court denied Ocwen’s exception raising the objection of no right of action and granted H. Stern’s motion to enforce settlement as follows:
The Court further hereby GRANTS H. Stern Investments’s motion on finding that Ocwen Bank sought additional accrued interest after it settled the foreclosure, and on finding that H. Stern Investments detrimentally and justifi *762 ably relied on the pleadings filed in this action before it provided the settlement funds to Ocwen Bank. Accordingly this Court hereby specifically holds that the $28,850.52 in accrued interest that accrued prior to July 1, 2001 was not pled in paragraph 5 of the Ocwen Bank’s Petition for Executory Process and that any debt owing to Ocwen Federal Bank on such prior accrued interest is not secured by the mortgage on the property subject to this litigation.
15It is from this judgment that Ocwen has appealed, assigning the following specifications of error:
1. Did the trial court err in finding that H. Stern Investments, which had assumed a note and mortgage, could “rely” upon pleadings that could be amended at any time?
2. Did the trial court err in limiting the collectibility of an obligation secured by a mortgage when H. Stern Investments expressly became a party to that obligation?
3. Did the trial court err in granting the motion to enforce a purported settlement?
DISCUSSION
The central question to be decided in this appeal is whether the February 18, 2002 “LOAN REINSTATEMENT SCHEDULE” constitutes a transaction or compromise as contemplated by La. Civ. Code art. 3071. Following our extensive review of the record herein, we disagree with the trial court’s finding that there was a settlement or compromise between Ocwen and H. Stern and reverse the April 24, 2003 judgment accordingly.
A transaction or compromise is defined in Article 3071 as follows:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
While Article 3071 does not provide for the consequences of failure to reduce a compromise agreement to writing, the Louisiana Supreme Court has previously held that a compromise that is not reduced to writing is unenforceable. Further, the requirement that the agreement be reduced to writing necessarily implies that the agreement be evidenced by documentation signed by both parties. Felder v. Georgia Pac. Corp., 405 So.2d 521, 523 (La.1981); Brasseaux v. Allstate Ins. Co., 97-0526, p. 5 (La.App. 1 Cir. 4/8/98), 710 So.2d 826, 829.
[fiOn appeal, Ocwen assigns error to “[H.] Stern’s claim, and the trial court’s conclusion, that an agreement with Mr. and Mrs. Hawkins, allowing them to bring their past-due arrearage current and halt the foreclosure suit is some type of ‘settlement’ of the remaining amounts owing on the loan secured by the mortgage.” With regard to the purported settlement, Ocwen contends the February 18, 2002 letter it sent to Mr. and Mrs. Hawkins “cannot in any sense of the word be a ‘settlement’ or ‘transaction and compromise’ designed to limit Ocwen Federal’s right to collect the full amount of the loan as such payments become due.” Moreover, Ocwen notes that H. Stern “introduced no evidence of *763 either a writing by Hawkins or a transcript of an oral agreement in court.”
We agree with Ocwen’s arguments concerning this issue. The February 18, 2002 “LOAN REINSTATEMENT SCHEDULE” does not constitute a transaction or compromise pursuant to Article 8071. It merely serves as a notice to Mr. and Mrs. Hawkins that their account is past due and that as of February 28, 2002, the amount necessary to reinstate the loan is $7,394.89. Under the jurisprudence and applicable law cited above, this February 18, 2002 letter cannot be considered an agreement of the parties reduced to writing. Therefore, we conclude the trial court erred in holding that there existed a valid and enforceable compromise agreement between Ocwen and H. Stern, and reverse the April 24, 2003 judgment accordingly.
CONCLUSION
For the above and foregoing reasons, the judgment of the trial court granting H. Stern’s motion to enforce settlement is reversed. All costs associated with this appeal are assessed against H. Stern.
REVERSED.

. According to the record, on March 6, 2002, counsel for Ocwen wrote to Mr. and Mrs. Hawkins, advising them that they were in default under the terms and conditions of the note and mortgage and that as of March 5, 2002, $28,350.52 was the amount necessary to "cure the current delinquency” and prevent foreclosure proceedings.