STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

CA 05-1084


JULIE SIMON ALBARADO, ET AL.

VERSUS

STATE FARM MUTUAL AUTO INS. CO., ET AL.


**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2003-2205
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********


Court composed of Jimmie C. Peters, Michael G. Sullivan, and Glenn B. Gremillion, Judges.


REVERSED AND REMANDED.


Gregory B. Dean
Dean Law Office
P. O. Drawer 280
Opelousas, LA 70571-0280
(337) 942-5111
Counsel for Plaintiffs/Appellants:
    Julie Simon Albarado
    Barry J. Albarado

Jackson B. Bolinger
Caffery Plaza, Suite 100
4023 Ambassador Caffery Parkway
Lafayette, LA 70503
(337) 988-7240
Counsel for Defendants/Appellees:
      State Farm Mutual Auto Ins. Co.
      Jared C. Wooten

GREMILLION, Judge.

The plaintiffs, Julie and Barry Albarado, appeal the trial court's grant of summary judgment in favor of the defendants, Jared C. Wooten and State Farm Mutual Automobile Insurance Company, finding that the Albarados' claims against the defendants had been settled pursuant to an Agreement and Release executed by Julie and State Farm on December 3, 2002. For the following reasons, we reverse and remand for further proceedings.

## FACTS

Julie suffered an injury to her neck after the vehicle Barry was driving was rear-ended on October 25, 2002. The accident occurred after Wooten's vehicle rear-ended a vehicle stopped in traffic. This led to a chain reaction of three vehicles hitting the vehicles in front of them. The Albarados' vehicle was the fourth vehicle impacted. Julie was treated at an emergency room, but was released after x-rays were taken. She sought follow-up treatment from her family physician and a chiropractor and eventually underwent four to six weeks of physical therapy for probable pulled muscles in her neck.

On December 3, 2002, Julie met with Heath Mills, an adjustor for State Farm, Wooten's automobile insurer. As a result of this meeting, she signed a "Release," whereby she settled her claims with Wooten and State Farm in exchange for the sum of $8,291.34. A second document, entitled "Agreement and Release," was also purportedly executed by the parties on December 3, 2002. This document which superceded the first agreement, settled Julie's claims for $8,291.34 and required Wooten and State Farm to pay all reasonable and necessary medical

1

expenses not previously paid up to the amount of $3000. Shortly after the agreement was reached, Julie learned that she had suffered two herniated discs in her neck as a result of the accident.

On April 28, 2003, the Albarados filed suit against Wooten and State Farm alleging that Julie's prior settlement agreements were null and void as neither party was aware of the seriousness of her injuries at the time the agreement was reached. In response, Wooten and State Farm filed an answer and request for a jury trial, as well as a motion for summary judgment arguing Julie's claims were settled. The Albarados filed a motion for summary judgment alleging facts calling into question the validity of the two documents. Following a hearing on the motions, the trial court granted summary judgment in favor of Wooten and State Farm finding that Julie had compromised her claim via the two documents. It denied the Albarados' motion for summary judgment and their request for new trial. This appeal by the Albarados followed.

**ISSUES**

On appeal, the Albarados argue the correctness of the trial court's judgment in favor of Wooten and State Farm.

**SUMMARY JUDGMENT**

The standard of review pertaining to summary judgment is well established, as provided by La.Code Civ.P. art. 966. Thus, an appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191. This inquiry seeks to determine whether any genuine issues of material fact exist and whether the

movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). Accordingly, we will undertake a de novo review of the matter.

After reviewing the record and the evidence, we find that a settlement was reached between Julie and State Farm on December 3, 2002, with the execution of the "Release." However, we find that a novation of this obligation occurred when the parties executed the "Agreement and Release" shortly thereafter. Although the "Agreement and Release" is also dated December 3, 2002, both Julie and Mills testified that it was confected at a later date.

In *Scott v. Bank of Coushatta*, 512 So.2d 356 (La.1987), the supreme court explained that a novation occurs when a new obligation is substituted for an existing obligation which, in effect, extinguishes the prior obligation, citing La.Civ.Code art. 1879.

> Planiol notes that every novation presupposes: (1) the existence of a debt to be extinguished; (2) the creation of a new debt; (3) a difference between the two successive obligations; (4) the will to extinguish the first; and (5) the capacity to dispose of the credit. Planiol, Traite Elementaire De Droit Civil 1 § 532 (1959). The extinguishing effect of the novation is comparable to that of the defense of payment. *Id.* at § 548.
>
> A novation may never be presumed. La.Civ.Code Ann. art. 2190 (West 1952) [current art. 1880][.] Accordingly, the burden of proof for establishing a novation is on the person who asserts it.
>
> The most important factor in determining whether a novation has been effected is the intent of the parties. Thus, a novation may occur where the intent of the parties, the character of the transaction, the facts and circumstances surrounding the transaction and the terms of the agreement reveal a desire to effect a novation. "Although novation does not take place as a necessary consequence of a creditor's taking a new note in substitution of one which he returns to the debtor, novation does take place in such a case if the circumstances surrounding the transaction show . . . that the parties intended to extinguish the existing

3

debt and to substitute a new one in its place." *White Co. v. Hammond Stage Lines*, 180 La. 962, [971,] 158 So. 353, 356 (1934).

*Id.* at 360-61 (citations omitted).

Mills, testifying in deposition, stated that the second settlement agreement was reached after Julie contacted him concerning the need for further medical treatment for her neck. Sympathizing with her, he agreed to execute a medical release instead of a full and final release of her claim. This document, the "Agreement and Release," paid her the same amount of damages, plus up to an additional $3000 for any medical expenses not previously paid. Once the "Agreement and Release" was signed, Mills testified that the original "Release" was no longer valid.

Considering this evidence, we find that all of the elements of a novation have been satisfied. The original "Release" existed which settled Julie's claims. Her need for further medical treatment arose, so she and State Farm reached a second agreement; thus, the later "Agreement and Release" extinguished the obligations set out in the "Release." Accordingly, we find that the "Agreement and Release" is the only settlement agreement existing between Julie and State Farm. We will now consider this document.

**AGREEMENT AND RELEASE**

Louisiana Civil Code Article 3071 provides that a "*transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." Article 3071 further provides that a compromise

4

may either be in writing or be recited in open court and capable of being transcribed from the record of the proceedings. As a written document is contemplated, jurisprudence also requires that the documentation evidencing the agreement be signed by both parties. *Felder v. Georgia Pac. Corp.*, 405 So.2d 521 (La.1981); *Ocwen Fed. Bank, FSB v. Hawkins*, 03-1622 (La.App. 1 Cir. 5/14/04), 879 So.2d 759.

After reviewing the evidence, we find that a genuine issue of material fact exists as to whether a valid compromise was executed. The "Agreement and Release" explains the terms of the compromise; it was signed by Julie; and was witnessed by Kathi Courts, a receptionist for State Farm. Also included on the document is a signature which purports to be that of Mills; however, he testified that he did not sign the document nor could he recall if he was present when it was signed by Julie. The record is devoid of evidence indicating who wrote Mills' signature on the document. Thus, we find that the formalities for a valid compromise have not been met; thus, a genuine issue of material fact still exists. Accordingly, the trial court's grant of summary judgment in favor of Wooten and State Farm is reversed and the matter is remanded for further proceedings.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and the matter is remanded for further proceedings. The costs of this appeal are assessed to the defendants-appellees, Jared C. Wooten and State Farm Mutual Automobile Insurance Company.

**REVERSED AND REMANDED.**